THE STATE ex rel. ARTHUR O. MEININGER v. RANSOM A. BREUER, Judge of Circuit Court, and HOWARD SIDENER, Circuit Attorney.

### In Banc, July 3, 1924.

1. **JURISDICTION: Trial of Convicted Defendant.** Where defendant has been convicted under an indictment charging a felony and has been sentenced to the penitentiary, and has appealed from the judgment adjudging him guilty, and has given an appeal bond which entitles him to be at large while said bond is in force and his appeal is pending, the circuit court has jurisdiction to put him upon trial under another indictment charging him with having committed another felony prior to the time he was sentenced.

2. ———: ———: **Prior Decisions.** The Supreme Court has never ruled that Section 3697, Revised Statutes 1919, deprives a circuit court of jurisdiction to put an accused previously convicted and sentenced upon trial for an offense committed prior to such previous sentence. [Ex parte Meyers, 44 Mo. 279, and other decisions reviewed at length.]

   *Held,* by GRAVES, C. J., dissenting, with whom WOODSON and WALKER, JJ., concur, that the Missouri rule for many years was that an accused under sentence to the penitentiary cannot, at a later term of court, be tried upon a charge of a crime committed before the sentence, and later the additional rule was deduced that it was not necessary to pronounce sentence at the particular term at which a defendant was convicted, but that sentence could be postponed until defendant was tried on other pending charges; and that both rules went to the question of jurisdiction, which means the present legal right to try, hear and determine a cause.

   *Held,* by WOODSON, J., also dissenting, that to place a defendant under sentence to the penitentiary upon his trial for another

State ex rel. Meininger v. Breuer.

offense would be to deny him his constitutional right to trial by jury as heretofore enjoyed, in that, if he is tried by a jury ·of his peers the jury must consist of convicts.

3. ——:  ——: Statutes: Section 3697: Cumulative Sentences. There is no statute forbidding the trial of an accused who has already been convicted and sentenced on another charge. Section 3697, Revised Statutes 1919, providing that "when any person shall be convicted of two or more offenses, before sentence shall have been pronounced upon him for either offense, the imprisonment to which he shall be sentenced upon the second or other subsequent conviction shall commence at the termination of the term of imprisonment to which he shall be adjudged upon prior conviction" was intended to make it clear that different sentences should be successive or cumulative, and not concurrent; it was intended to control the interpretation of judgments which omitted to recite that two or more sentences were to be considered as imposing successive or cumulative imprisonment, and by its own force made such sentences to run successively. And since it would be impossible to impose cumulative sentences without separate convictions, the rule, which was practically universal before the enactment of this statute in 1835, that the courts had power to try and sentence an accused who had already been tried and found guilty of another offense, was not impaired by this statute declaring that the sentences should be separate and run successively.

4. ——:  ——: Constitutional Requirement. The constitutional guaranty of a speedy trial makes no exception of an accused under sentence for another offense, and courts cannot invent a rule that makes such an exception. There is no principle or rule whereby a conviction and sentence in one case prevents, by its own force, a subsequent trial, conviction and sentence in another case. [Whether an accused who has been convicted and sentenced can be held in jail until a later term for trial on another charge is not a question in this case, and therefore is not decided; but the authorities holding that a penitentiary is not a sanctuary, and that a convict imprisoned under one sentence may, by *habeas corpus* or other appropriate proceeding, be brought into court and placed upon his trial upon another charge, in the same or a different court, and that his absence from prison while attending said trial is to be counted as a part of his term of imprisonment, are extensively quoted.]

5. ——:  ——: Convict: Civilly Dead. That an accused who has been convicted and sentenced is civilly dead is no reason why he cannot be tried for crime. No statute exempts a convict from punishment for crime, and no statute fixes upon him disabilities that guarantee him immunity from being brought into court and

State ex rel. Meininger v. Breuer.

tried for his offenses under the same rules and protection the law accords to other offenders.

6. **STATUTES: Enacting Existing Law: Effect on Other Statutes.** The Legislature cannot, by enacting a statute on the theory that that is not the law which in fact is the law, work the repeal of another provision of the law which the statute so enacted does not purport to cover.

7. ———: **Judicial Construction: Re-Enactment: Legislative Approval.** A judicial construction of a statute cannot be worked into it by re-enactment until it has been construed, and even then the construction worked into it must be the one given it, and no other. Section 3697, first enacted in 1835 (Sec. 9, p. 213, R. S. 1835), was not construed in Ex parte Meyers, 44 Mo. 279, to mean that an accused under sentence in one case cannot be tried, convicted and sentenced in another case for an offense committed before the first sentence, but it was there expressly held that the statute did not apply to the facts of that case, and it was because there was no statute covering the case that it was there said that the petitioner could not have been tried after sentence, and consequently it cannot be logically contended that, by the subsequent re-enactment of that statute in the same form and the carrying of it forward in the various revisions, a legislative approval has been given to the *obiter dicta* of the Meyers Case. In no event, where the sole question at issue is whether the court has jurisdiction to place a defendant under sentence upon his trial for another offense, could a re-enactment of that statute, which pertains solely to the order of pronouncing sentence, be considered a legislative deprivation of jurisdiction.

8. ———: ———: **No Existent Different Rule.** The so-called judicial rule that an accused under sentence for one offense cannot be placed upon trial and convicted of another offense under another pending indictment is wrong, and never in fact existed in this country, but is a survival of the old doctrine of *autrefois attaint* which never applied in this country. It is a rule which, if adhered to, would in many cases enable a guilty person to escape just punishment by the running of the Statute of Limitations.

  *Held*, by GRAVES, C. J., dissenting, with whom WOODSON and WALKER, JJ., concur, that said rule is as equally fair, both to the State and the accused, as the contrary rule, since there was no limit to the number of convictions if sentence after conviction of one offense was postponed until defendant was tried under other separate pending indictments.

---

Headnotes 1, 2, 3, 5 and 8: Convicts, 13 C. J. sec. 14. Headnote 4: Convicts, 13 C. J. sec. 14; Criminal Law, 16 C. J. sec. 797. Headnote 6: Statutes, 36 Cyc. 1079. Headnote 7: Convicts, 13 C. J. sec. 14; Statutes, 36 Cyc. 1153.

## Prohibition.

PRELIMINARY RULE DISCHARGED.

*James Booth, Cole & Jenny, Harvey & Boer* and *Anderson, Gilbert & Wolfort* for relator.

(1)   Sec. 3697, R. S. 1919, was construed in Ex parte Meyers, 44 Mo. 282, and the court there held that under this section a defendant could not be tried after sentence, at a subsequent term, pending the appeal.   After this construction this statute was re-enacted through the revisions of 1879, 1889, 1899, 1909 and 1919 without change.   This rule has been affirmed and followed in: State v. Buck, 120 Mo. 479; State v. Bell, 212 Mo. 130; State ex rel. Stevens v. Wurdeman, 295 Mo. 566.   (2) Where the courts have construed a statute and the statute is carried forward in subsequent revisions this construction will be held to be part of the revised statute. State v. Schenk, 238 Mo. 429; Handlin v. Morgan County, 57 Mo. 116; Camp v. Wabash Railroad Co., 94 Mo. App. 272; Saunders v. Anchor Line, 97 Mo. 26; Northcutt v. Eager, 132 Mo. 265; State v. Withrow, 133 Mo. 500; C. & A. Railroad Co. v. United States, 37 Sup. Ct. Rep. 241; National Lead Co. v. United States, 40 Sup. Ct. Rep. 237; Schawacker v. McLaughlin, 139 Mo. App. 341.   (3) This is emphasized by the fact that the Legislature in 1897, Laws 1897, page 71, now Sec. 4165, R. S. 1919, provided for the trial of a convicted man out on parole for the commission of an offense subsequent to his conviction or parole.   The intent of the Legislature is further evidenced by provisions made by Sec. 1668, R. S. 1879 (now Sec. 2292, R. S. 1919), whereby one under sentence may be charged and tried.   This statute is found as Sec. 23, Chap. 207, General Statutes 1865, and at that time provided: "The person of a convict sentenced to imprisonment in the penitentiary is and shall be under the protection of the law, and any injury to his per-

son, not authorized by law, shall be punishable in the same manner as if he were not under conviction and sentence." See also Sec. 1668, R. S. 1879. (4) Prohibition is the proper remedy. The relator has no adequate remedy by appeal or otherwise. State ex rel. Stevens v. Wurdeman, 295 Mo. 580; State ex rel. Ore v. Latshaw, 237 S. W. 770; State ex rel. v. Jones, 274 Mo. 395; State ex rel. v. Denton, 229 Mo. 187; State ex rel. v. Henson, 217 S. W. 17; State ex rel. v. Buckner, 203 S. W. 42; State ex rel. v. Eby, 170 Mo. 497.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for respondent.

(1) The Constitution and the statutes have given the circuit courts jurisdiction to try persons indicted for the commission of felonies. No immunity is given to a person who is under a sentence to the penitentiary. Sec. 22, art. 6, Mo. Constitution; Secs. 2436, 3365, 3974, R. S. 1919. (2) Neither the Constitution nor the statutes prohibit a circuit court from trying indictments against persons who are under penitentiary sentences for the commission of a felony. Ex parte Allen, 196 Mo. 226, 232. (3) As the petitioner has appealed from the judgment and sentence of imprisonment and has been released from custody under an appeal bond, the judgment and sentence of imprisonment is suspended. Ex parte McAnally, 199 Mo. 512. (4) The denial to the State of the right to prosecute one who is under sentence is wrong in principle. It is contrary to the great weight of authority in this country and in England. It safeguards no rights whatever of an accused, oftentimes defeats the rights of the public and might be used to the great disadvantage of the accused. Simpson v. State, 56 Ark. 8; People v. Majors, 65 Cal. 138; State v. Wilson, 38 Conn. 126; Flagg v. State, 11 Ga. App. 37; Peri v. People, 65 Ill. 17; Kennedy v. Howard, 74 Ind. 87; Huffaker v. Com., 124 Ky. 115; Rigor v. State, 101 Md. 465; Singleton v. State, 71

Miss. 782; Thomas v. People, 67 N. Y. 218; Ex parte Tranmer, 35 Nev. 56; Henderson v. James, 52 Ohio St. 242; Com. v. Rammuno, 219 Pa. 204; State v. McCarty, 1 S. C. L. 334; Brown v. State, 50 Tex. Cr. 114; Clifford v. Dryden, 31 Wash. 545; State v. Keefe, 17 Wyo. 227; Arrowsmith v. State, 131 Tenn. 480; People v. Flynn, 7 Utah, 378; Re Wetton, 1 Cromp. & J. 459; Reg. v. Day, 3 Fost. & F. 526; Ponzi v. Fessenden, 258 U. S. 263.

*C. O. Pearcy* for respondent *Sidener.*

(1) We have no statute prohibiting the trial of a person who has been sentenced to imprisonment in the penitentiary for the commission of a felony. (2) The first judicial construction of this court of Sec. 3697, R. S. 1919, was not necessary to a decision of the point at issue in the case and what was said therein was *obiter dictum.* The subsequent rulings as to the effect of the statute were based upon mere *dictum.* Ex parte Meyers, 44 Mo. 279, 282; Williamson's Case, 67 Mo. 174; Ex parte Bryan, 76 Mo. 253, 254; State v. Jolly, 96 Mo. 435, 438; State v. Buck, 120 Mo. 479, 496. (3) The soundness of the rule that a person under sentence may not be tried until discharged of the sentence has been questioned by this court. State v. Jennings, 278 Mo. 544, 551. The rule is denounced in many jurisdictions as unsound. Ex parte Lamar, 274 Fed. 160, 171; Re Application by Tranmer, 35 Nev. 56, 41 L. R. A. 1095; State ex rel. Stevens v. Wurdeman, 295 Mo. 566. (4) The writ of prohibition will lie only to restrain the unlawful exercise of judicial functions by an inferior tribunal and should never be directed to a prosecuting officer. The respondent circuit attorney is not attempting to usurp or to exercise any judicial functions. The only necessary respondent is the court where proceedings are sought to be restrained. State v. Elkin, 130 Mo. 90, 107.

*James Booth, Cole & Jenny, Harvey & Baer* and *Anderson, Gilbert & Wolfort* for relator in reply.

(1) Counsel for respondents are in error in asserting that our State is alone in the rule first stated in Ex parte Meyer, 44 Mo. 279, and since followed. A statute in almost the same words and to the same effect as our Section 3697 is to be found in the Penal Code of California, Section 669 thereof. It was construed by the Supreme Court of California in the case of Ex parte Morton, 132 Cal. 346, decided in 1901. In that case the defendant was convicted of assault with intent to commit murder, in July, 1890, and sentenced to imprisonment for a term of ten years. On the 7th day of August, 1890, he was found guilty of burglary and on the 9th day of August, 1890, sentenced to an imprisonment for five years "to commence at the expiration of the term of imprisonment defendant is now serving in the state prison for assault to commit murder." He claimed he had served out his first sentence and could not be compelled to serve out the second, in view of the statute. The court discharged him because sentence on the second conviction was not imposed as required by the statute. This statute is still in force in California, and is considered by the District Court of Appeals of California in November, 1919, in the case of In re Selowsky, 44 Cal. App. 421. Sec. 9527, Code of Iowa, 1919, is likewise a similar statute, as is Sec. 7201, vol. 5, Code of Tennessee. And that the power to impose cumulative punishment is one derived from statute, we respectfully refer the court to James v. Ward, 2 Metc. (Ky.) 272; Miller v. Allen, 11 Ind. 389. A statute in the very same language as our own is found in Revised Statutes of Kansas 1923, p. 982, being statute No. 62-1512. (2) Respondents urge that Section 22, Article VI, of the Constitution, and Sec. 3846, R. S. 1919, give the court the right to impose successive sentences at different terms. By the Constitution "the circuit court shall have jurisdiction over all criminal cases not otherwise provided by law," and by Section

3846, "except as otherwise provided by law, the circuit courts shall have exclusive original jurisdiction in all cases of felony." That the circuit courts have jurisdiction of felonies is clearly set forth, but how to exercise that jurisdiction is not set forth in these provisions of the Constitution and statutes. Giving the circuit courts jurisdiction does not authorize them to determine what offenses are felonies, what punishment shall·be inflicted, when sentence shall be imposed, or any other matter. The mode of exercise of the jurisdiction must be found elsewhere, for these provisions are not self-executing. (a) The Constitution contains no provisions regulating the trial and sentence of one already sentenced, so no authority there is conferred. (b) The only statute authorizing the trial of one already under conviction is Sec. 3697, R. S. 1919, and that statute is exclusive upon this subject. While the circuit courts have constitutional jurisdiction in felony cases, they cannot exercise that jurisdiction in the absence of a statute creating the felony and fixing the punishment. There are no common-law felonies in Missouri. A felony is defined by Sec. 3712, R. S. 1919, and punishment for common law offenses is provided by Sec. 7049, R. S. 1919. As neither the Constitution nor the present statutes authorize trial of one under sentence for felony, where could the courts obtain such authority? Only from an act of the Legislature, and until that act is passed the courts will not usurp the legislative function. State ex rel. v. Taylor, 220 Mo. 635; State v. Snow, 252 S. W. 629; Dworkin v. Ins. Co., 226 S. W. 821.

JAMES T. BLAIR, J.—In March, 1923, relator was convicted of embezzlement and sentenced to the penitentiary, and appealed. While this case was pending on appeal, the same circuit court took steps to put relator on trial on indictments for felony which had been found before his conviction for the embezzlement. He thereupon began this proceeding in prohibition. The ques-

tion presented is whether the circuit court has *juris-diction* to try relator for the other offenses in question during the pendency of his appeal.

Relator contends, in legal effect, that (1) Section 3697, Revised Statutes 1919, deprives the circuit court of jurisdiction to proceed in the cases on which it was about to try relator; (2) that whatever is thought of this construction of the statute it has been worked into its words by its subsequent re-enactments; (3) that this construction is supported by other enactments; and (4) prohibition is the appropriate remedy.

I.   This court has never held that Section 3697 deprives a circuit court of *jurisdiction* to put one previously convicted and sentenced upon trial for an offense committed prior to such previous sentence, but has heretofore (Ex parte Allen, 196 Mo. l. c. 232) pointed out the difference between its previous rulings and the rulings sought in this case. It seems appropriate carefully to examine the supposed principle which lies at the root of relator's contentions.

Prior Decisions.

II.   The doctrine which relator now urges this court to adopt is founded by him upon a construction he gives certain decisions of this court. Chief among these is Ex parte Meyers, 44 Mo. 279.   In that case the record (still on file) and the opinion show that Meyers, at the March, 1866, term of the St. Louis Criminal Court, pleaded guilty to a charge of grand larceny and was thereupon sentenced to two years' imprisonment in the penitentiary. At the May, 1866, term of the same court Meyers was convicted by a jury on a like charge and sentenced to three years' imprisonment in the penitentiary. The second sentence in no way refers to the first, and the trial court made no effort to make the terms cumulative or successive. Meyers was committed to the penitentiary and served *more than three years* in that institution.   In July, 1869, he sued out a

Cases Reviewed.

writ of *habeas corpus,* whereby he sought his discharge. In his brief, a single manuscript page, he made the points: "Conceding that under our statute" (now Section 3697) "a sentence may be by judgment of the court made to commence at a future time or upon the expiration of a former sentence; that statute cannot apply here because (1) it does not appear by the record that the second conviction was before sentence in the first was pronounced, as one was on the 31st March and the other on 8th June, 1866; (2) It was the duty of the court pronouncing the sentence to have stated the time when the second conviction should begin" and "no cause is to be brought by construction within a statute when it does not fully come within" it.

Counsel for respondent in that case suggested that the statute applied and of itself made the sentences cumulative, since the record showed a sentence on the first conviction before sentence in the second, but did not show a sentence in the first before conviction in the second case.

In its opinion the court pointed out the error in the assumption that both convictions occurred at the same term, and stated the facts as the record shows them, i.e. that the sentence on the plea of guilty was passed at the March term, 1866, and the conviction on the second charge occurred at the May term, 1866, and concludes: "The prisoner was twice found guilty and sentenced on each finding at different terms." For that reason the court held that Chap. 207, sec. 9, Revised Statutes 1865 (now Sec. 3697, R. S. 1919) *did not apply to the case* because "this section applies only where a person is convicted of two or more offenses at the same term, and both convictions must take place before the sentence is pronounced in either case." When this point had been reached, the court had disposed of the statute. The proceeding before it was in *habeas corpus,* and the question was whether the record showing entitled the warden further to hold petitioner in his custody under the two

sentences. Petitioner had served a time in excess of the longest of these. The law then, as now, was settled beyond dispute that, in the absence of a statute to the contrary, sentences were not cumulative, even where they might be made so, unless the sentencing court expressly made them so by directing that the subsequent one should commence at a future time determined or determinable with certainty. In the Meyers sentences no sort of effort was made by the trial court to render the sentences cumulative. The court discussed other matters but finally ruled as follows: ''The prisoner has already served out more than the length of time prescribed by the longest sentence, and I think that he is entitled to his discharge. Prisoner discharged. The other judges concur.'' Since the trial court had not attempted to exercise the power to make the sentences cumulative, the court took the right course in disposing of the case on that theory, as it did in the sentence quoted in which its actual ruling appears.

But it may be said that if the trial court had no jurisdiction to impose the second sentence, that would have entitled Meyers to his discharge, and that put the question of jurisdiction in the second trial into his *habeas corpus* case, and what the court said was pertinent to that question and, therefore, not *obiter dictum*.

First, this court held (Ex parte Allen, 196 Mo. 226) that this is not the true construction of the decision in State v. Buck, 120 Mo. 479, which is founded upon and purports to follow the Meyers Case. It is pointed out in the Allen Case that the ruling in the Buck Case was that to put upon trial one who had previously been convicted and sentenced was *error* and not a *jurisdictional* matter. Necessarily this applies to the Meyers Case. The case was so construed in Indiana. [Kennedy v. Howard, 74 Ind. 87.]

The court in the Allen Case (l. c. 231) ruled that the question was not one of jurisdiction. It said: ''Was the court without jurisdiction to try defendant for the sec-

ond offense, committed after he had been tried and convicted of robbery and while he was awaiting the adjournment of court at that term to be conveyed to the penitentiary? We have no hesitancy in holding it was not." The court then approached the question from two different angles, on principle and with reference to a special statute. With respect to the first it said, in part: "It was a court of criminal jurisdiction and had jurisdiction to hear and determine the offense of which petitioner was convicted and over the person of petitioner. The contention of petitioner is based upon certain statutory provisions of our laws and decisions of this court, and the question is, has he properly construed the statutes and decisions of this court?" It is in this connection that the court discusses the Buck and other cases, with the result already pointed out. Subsequently, it takes up, independently, the discussion of a special statute which it holds applies and constitutes a second answer to petitioner Allen's contention. It, therefore, appears that this court has not only *not* held that the principle of the decision in Ex parte Meyers denies jurisdiction to try one already convicted and sentenced, but has specifically held that the exact contrary is true. Nor has it made a contrary decision in any subsequent case. In so far as that decision holds that the court had *jurisdiction* to try Buck on the second charge it is supported by practically all the decisions and text-writers on the subject, and is opposed by none. The Meyers Case has been widely criticized even as to the rule it is sometimes thought to announce on the subject it had before it, and we are now asked, in effect, to overrule State v. Buck, supra, and Ex parte Allen, and enlarge the scope and effect of the Meyers decision beyond the point at which the Buck Case held it stopped. Before this is done a full re-examination of the Meyers decision ought to be made.

III. Since certain remarks in Ex parte Meyers are earnestly pressed upon us as announcing a principle which

denies to the court power to proceed on indictments still pending against relator, it will not be amiss to consider these. When these remarks are taken as pertinent to the decision in that case, counsel urge that it was there decided that cumulative sentences cannot be imposed *unless authorized by statute;* that no such statute applies to this case and, therefore, etc. The court argued that: "The courts in this State have no common-law jurisdiction of felonies; and the powers they exercise are such as are conferred by statute only. In England, where the criminal practice is largely founded on the common law, a different system may prevail. There the punishment is largely left to the discretion of the court. The time that the prisoner is to be confined is not determined by the jury; they simply pass upon his guilt, and the duration of the imprisonment is fixed by the court. The court, having the power to prescribe the length of time, may sentence the prisoner to several terms in succession, where he is charged with several offenses, because it could inflict the same amount of punishment in each case separately. But no such practice prevails here. Separate sentences can only be passed upon the prisoner in the cases and in the manner pointed out by the statute. There is no provision anywhere made, that I have been able to find, where separate sentences can be passed upon a prisoner, and he be subjected to more than one term of punishment, unless the different convictions were had at the same term, and both were obtained previous to the sentence." The court then proceeds thus: "But there is no authority for convicting a prisoner of felony at one term of the court, and regularly passing sentence upon him, and then remanding him to jail till the next succeeding term, and again convicting and sentencing him for another felony. As a general rule, the day on whch a prisoner is sentenced will be reckoned as a part of his term of imprisonment; then, in legal contemplation, he is in a custody different from that of the criminal court, and

*Further of Ex parte Meyers.*

cannot again be put upon trial till he has served out the term of imprisonment assessed against him." The court previously had said: "The law certainly contemplates that after a prisoner is sentenced he will be immediately transferred to the custody of the penitentiary, and not be detained for future arraignment at subsequent terms. If such a course of practice had been intended, the statute would surely have made some provision for it. . . . In the present case there is nothing in the judgment of the criminal court or the commitments stating when the second term shall commence, but there is nothing in the statute requiring it; for, *in fact, it is a proceeding not within the purview of the statute.*" The court then cites and quotes from Miller v. Allen, 11 Ind. 389, and James v. Ward, 2 Metc. (Ky.) 271.

(1) It seems obvious that the argument which is founded upon the fact that English trial judges have power to fix the terms of punishment on conviction, while ours, except in exceptional cases, have no such power, has no tendency to deny to either court the power to *try* one already convicted and sentenced. It necessarily has reference merely to the power to impose cumulative sentences. It is founded solely on a difference in procedure after a finding of guilt, and in no way tends to impair the jurisdiction to proceed with the case until that finding is made. Neither does it have anything to do with the sentencing of the prisoner after a second finding of guilt. It expends its whole force, if force it has, on the question whether the sentences imposed must run concurrently or may be made cumulative. It was put forward in an effort to explain why an English judge could make sentences run concurrently. The effort was to show that English judges had a power which explained their authority to make sentences cumulative, which power our trial judges did not have. It is apparent this argument in no way tends to deny the *jurisdiction* of our courts to *try and sentence* one who has already been

*Jurisdiction.*

sentenced on another charge, whatever may be said of its validity, as an argument, with respect to the only matter to which it is relevant.

The statement of the court that "our courts have no common-law jurisdiction in felonies and the powers they exercise are such as are conferred by statute only" may be interpreted to mean that the court was of the opinion that no cumulative sentences could be imposed unless authority to do so was expressly conferred by statute. If that is its meaning, it has nothing to do with the question of the court's *jurisdiction* to try one under sentence. If the court meant by that sentence that the court had no *jurisdiction to try* Meyers for the second offense, it certainly forgot its meaning when it immediately began to support it by an argument which, as just pointed out, had nothing to do with that question. It also must have forgotten the rulings in the two cases it had just previously cited and quoted from, which had held merely that the trial courts could not impose cumulative sentences, and that an order attempting to make them so was a nullity. Further, when it came to the final ruling which disposed of the case, it founded it upon the fact that Meyers had served "more than the length of time prescribed by the longest sentence, and I think," etc. If the court meant that there was no *jurisdiction* to try Meyers on the second charge after his previous sentence, and, therefore, the second sentence was a nullity and he could not be held at all on it, the court expended in vain its labor on the question of power to impose cumulative sentences. If there was no *jurisdiction* in the second case, there could have been no basis for any sentence in that case, cumulative or concurrent, and no question concerning the quality or effect of a sentence which did not exist legally was in the case. No question whether sentences are cumulative or concurrent can arise when only one sentence of a court with jurisdiction has been rendered.

(2) Even the announcement that sentences could not be made cumulative, except under statutory authority, was wrong then and is wrong now. The obvious confusion of thought in the briefs is well reflected in the opinion. Counsel did not cite any cases on the point except the two already mentioned.

*Cumulative Sentences.*

It is unfortunate that counsel did not cite the other numerous decisions and authorities which were then in print and accessible and which decided this question. The opinion in the Indiana case, which the court cited, in closing frankly admits that "we have been furnished with no authorities on the question involved, and *in the absence of authority to the contrary* [italics ours] it seems to us that the discharge of the prisoner was correct for the reasons indicated." The "reasons indicated" by the court were that there was no statute which authorized a trial court to impose a sentence to begin at a future period of time. This was not reasoned by the Indiana court and no case was cited. This court, in the Meyers Case, cited also the Kentucky case mentioned above. That case cites and follows the Indiana case and is founded upon it. In the Kentucky case, Rex v. Wilkes, 4 Burr. l. c. 257, was cited, and the learned court met it with the argument which this court borrowed in the Meyers Case, to-wit, that the fact the English judges fixed the period of imprisonment constituted a difference in situation which rendered the decision inapplicable under the Kentucky law, whereunder juries fixed the terms of punishment. In 4 Burrows there appears the sentence to the effect that the imprisonment on the second conviction "should be computed from and after his aforesaid imprisonment for printing and publishing the aforesaid libel entitled 'the North Briton, No. 45.' " It is then shown that a writ of error was brought, returnable to Parliament and that "both judgments were affirmed." The point against the cumulative sentences is shown to have been made by counsel for the hearing before Parliament on the writ of error, but neither the argument of

counsel nor the reasoning of the High Court of Parliament in affirming the sentences is shown or epitomized. It was in this state of things that the Kentucky court advanced the reasoning it used in explanation of the ruling in Rex v. Wilkes, which argument this court adopted. In view of the warning in the opinion in the Indiana case, that it was being decided without the examination of authorities, and the fact that the Kentucky case was founded upon the Indiana case and contained an effort to explain the reasons for the ruling in the High Court of Parliament, which reasons were not before the Kentucky court, as an examination of its opinion and 4 Burrows shows, it would have been well to turn to the report of the case of Wilkes v. The King on the hearing in the High Court of Parliament in order to discover what reasons *that court said* actually moved it to its decision on the point. In John Wilkes, Plaintiff in Error, v. The King, Defendant in Error, 4 Brown's Cases in Parliament (1803) l. c. 366, what the High Court of Parliament gave as *its* reasons for its ruling appears as follows:

"With regard to the error assigned in the judgment, that the imprisonment was to commence at a future day, it was apprehended that the judgment was given in that manner with the strictest propriety. The court meant that Mr. Wilkes should undergo twelve months' imprisonment for this offense, which could not be inflicted in any other manner. It would have been absurd to have made the imprisonment to commence immediately, Mr. Wilkes being already under sentence of imprisonment for ten months; and, in that case, would in effect have only suffered an imprisonment of two months; when the court, on account of the enormity of the offense, intended he should be imprisoned twelve months; and as that space of time was to be the measure of his imprisonment for this offense, it could not effectually have been inflicted in any other manner, unless the court had sentenced him to be imprisoned twenty-two months, to commence im-

mediately; and then there would have remained twelve months after the end of the ten months' imprisonment, which he had before been sentenced to. But that might be attended with hardship and injustice to Mr. Wilkes, by being imprisoned a longer time than the court meant, for the present offense; for if by the grace of the Crown, or by any means, the ten months' imprisonment should be pardoned, avoided or shortened, Mr. Wilkes under a sentence of twenty-two months' imprisonment, would be confined from the moment the former imprisonment should expire, until the end of the twenty-two months; which would exceed twelve months' imprisonment, when the court intended to inflict an imprisonment of twelve months only. Under the circumstances of this case, there was no incongruity in the imprisonment commencing at a future time; and if there was any novelty in it, it was to be attributed to the accumulated guilt of its object.''

It seems obvious that the absurdity of attempting to inflict two separate punishments by imprisoning one on both *sentences* at the same time is quite as applicable to sentences which follow verdicts fixing terms under statutes prescribing minimum punishments, as to sentences imposed by a court which itself fixes the terms of imprisonment. From this it is clear that the Kentucky court in 1859, and this court in 1869, attributed to the High Court of Parliament a reason which did not influence it in 1769 at all, and each made a holding directly in the face of the actual reasons given by that court for its ruling in Wilkes v. The King.

A reference to the Fifth American Edition (1847) of 1 Chitty's Criminal Law, side p. 718, discloses that the Wilkes Case is cited in connection with a paragraph as follows:

''When the defendant is in execution on a former judgment in a criminal case, sentence of imprisonment, and other penalties, may be given against him to commence from the expiration of the former confinement, previously awarded. So where he is charged with sev-

eral offenses at the same time, of the same kind, he may be sentenced to several terms of imprisonment, one after the conclusion of the other. The same might also be done in case of transportation; but it seems the court may, in their discretion, sentence the prisoner to another term, commencing before the expiration of that under which he is already laboring.''

In the note to this section is cited the case of Browne v. Com., 4 Rawle, 259, in which the Supreme Court of Pennsylvania held valid a sentence which was made to begin upon the expiration of imprisonment under a previous sentence. This decision was rendered in 1833. At the time the Meyers Case was decided, in the Third Edition of his Criminal Law (1865) Mr. Bishop, a recognized authority, in Volume I, Section 731, page 405, said:

''When a prisoner, under an unexpired sentence of imprisonment, is convicted of a second offense; or where there are two or more convictions, on which sentence remains to be pronounced, the judgment may direct that each succeeding period of imprisonment shall commence on the termination of the period next preceding—a doctrine, however, which has latterly been denied in Indiana'' (citing Miller v. Allen, supra). ''And if, in such a case, the earlier period is afterward shortened by a pardon of the offense, or a reversal of the sentence on writ of error, the next following one commences immediately, the same as if the earlier were ended by lapse of time.''

In a note to this section Mr. Bishop cites numerous decisions of American courts which support it, to several of which reference subsequently will be made. With respect to the decision in Miller v. Allen, supra, relied on by this court in the Meyers Case, Mr. Bishop said, in 1865: ''The judges were not aware that the question had been elsewhere decided the other way, and said.'' He then quotes the part of the decision which substantiates that statement.

At least as early as the Sixth Edition (1877) of Bishop's Criminal Law this note was revised to include

James v. Ward, supra (the other case cited by this court in the Meyers Case) and to read thus: "Cases like this should admonish prosecuting officers of their duty to study the criminal law, and furnish the courts with needed authorities."

In the eighth and ninth editions of the same work (Sec. 953, vol. I), this note reads, in part: "The case of Miller v. Allen, 11 Ind. 389, 391, which is contrary to the text, is simply a mistake, the court not having been referred to the authorities. And see James v. Ward, 2 Met. (Ky.) 271."

Prior to 1869 (the date of the Meyers decision) many American courts had passed upon the question decided in Miller v. Allen and James v. Ward. In 1822 in Russell v. Comm., 7 S. & R., 1. c. 490, the court said:

"As to imprisonment to commence at a future time, it is warranted by principle, practice and authority. It is not denied by the counsel for the prisoner, that it has been the common practice in the courts of this State. And the very point was decided by the highest authority in England in the case of King v. Wilkes in the year 1779, which, being before our revolution, is authority in our courts. Mr. Wilkes was convicted in the court of king's bench of two libels, for one of which he was sentenced to imprisonment for ten calendar months; and for the other, to be further imprisoned for the space of twelve calendar months, to be computed from and after the determination of the first imprisonment. A writ of error was brought on this judgment to the House of Lords, where it was affirmed by the advice of all the judges. So much for authority. But to consider the thing on principle: where a man has been sentenced to imprisonment for one offense, and is afterwards convicted of another, what can be so proper as to make his imprisonment for the second offense commence after the expiration of the first imprisonment? Would it not be absurd to make one imprisonment a punishment of two offenses? Nay, the absurdity does not end there, for

unless imprisonment for the last offense is to begin where the imprisonment for the first ends, it would be impossible, under our system, to punish the offender, in certain cases, for the last offense at all.''

In 1811, in State v. Smith, 5 Day, l. c. 178, 179, the court of Connecticut said:

''Upon another indictment against the prisoner, at the same term of the superior court, he was convicted of putting off another similar false and counterfeit note, and the court directed that he should be confined in New-Gate prison, three years for each offense; and that the second confinement should commence when the first term should expire. It is urged that this mode of accumulating the terms of imprisonment is novel, without precedent, cruel and illegal.

''The law requires that for the first offense charged in the indictment the prisoner shall, upon conviction, be sentenced to confinement in New-Gate for a term of not exceeding three years; but does not direct at what period of the prisoner's life the term of confinement shall commence. The courts are bound to become acquainted with the situation and circumstances of the prisoner, when they pronounce sentence. If through infirmity it should appear to be inhuman or improper to confine him to hard labor, in New-Gate, immediately upon conviction, it would be the duty of the court to postpone the commencement of his confinement to a future day. So, if the prisoner has been previously sentenced to imprisonment in New-Gate, or any other prison for a limited time, not then expired, by the superior court, or some other court of competent jurisdiction, it would be necessary to postpone the commencement of his confinement to prevent an interference of jurisdiction. And if, for the advancement of justice, or through the exercise of mercy the punishment may be delayed, a day, or a month, upon the same principle, it may be, for sufficient cause, postponed for one or more years, according to the discretion of the court.

304 Mo.—26.

"In the present case, the court, upon inspecting their own records, could perceive that the second sentence could not be executed agreeably to law, until the expiration of the first term of imprisonment. The postponement was, therefore, necessary to prevent the previous conviction from operating as an exemption from punishment, for a subsequent offense."

In 1846 in Kite v. Com., 11 Metc. (Mass.) l. c. 585, the court said:

"The court are all of the opinion that it is no error in a judgment, in a criminal case, to make one term of imprisonment commence when another terminates. It is as certain as the nature of the case will admit; and there is no other mode in which a party may be sentenced on several convictions. Though uncertain at the time, depending upon a possible contingency that the imprisonment on the former sentence will be remitted or shortened, it will be made certain by the event. If the previous sentence is shortened by a reversal of the judgment, or a pardon, it then expires; and then, by its terms, the sentence in question takes effect, as if the previous one had expired by lapse of time. Nor will it make any difference, that the previous judgment is reversed for error. It is voidable only, and not void; and, until reversed by a judgment, it is to be deemed of full force and effect; and though erroneous and subsequently reversed on error, it is quite sufficient to fix the term at which another sentence shall take effect."

In 1815 in Commonwealth v. Leath and Leath, 1 Va. Cases, l. c. 154, it was held that separate punishments might be imposed in successive sentences, and Com. v. Taylor, decided in 1800, is referred to as authority for the holding. The succinct argument of counsel for the State was "that the prisoners had been tried and convicted for separate and distinct felonies, and that for each of the said felonies, each of them was liable by the law of the land to distinct punishment." In 1850 in Mills v. Commonwealth, 1 Harris (13 Pa. St.) l. c. 633, 634, is a

decision which upholds successive terms of imprisonment on successive convictions and sentences. In 1868 in Williams v. State, 18 Ohio St. l. c. 47, 48, appears a decision which upholds, on principle, the power to impose cumulative punishments. In 1879 in In re Jackson, 3 McArthur's Reps. l. c. 26, the court said: "It is well settled that in a criminal case there is no error in a judgment making one term of imprisonment commence when another terminates, and when this forms part of the sentence, the judgment is then considered sufficiently cer-· tain . . ." The necessary implication in this language brings it into accord with the above cited cases. It bases the conclusion it draws on authorities all of which antedated the Meyers, Miller and James cases. Other authorities might be cited. The text books point out that cumulative sentences have been sustained "in most of the states as well as in England . . . without the aid of a statute." [Hughes, Crim. Law & Pr., sec. 3340, p. 892; 22 Standard Ency. Prac., p. 456.]

(3)   It is clear that in 1869 the law was well settled, with no well considered or reasoned case to the contrary, that American and English courts were authorized to impose cumulative sentences and that no statutory authority therefor was required. Practically every authority to that effect is an authority for the rule that the courts had power to try and sentence one who had already been tried and found guilty of another offense. The facts involved made this true. It would be impossible to impose cumulative sentences without separate convictions, save in exceptional cases in which two offenses may be prosecuted simultaneously, as in burglary and larceny.

*If Successive Sentences then Successive Trials.*

The fact that Meyers had been sentenced at a previous term in no way affected the rule or prevented his trial at a subsequent time or term for a second offense. The authorities outside of Missouri are in accord on that question. This applies to decisions, text-writers and

commentators.   A number of decisions already cited announce the rule and apply it.   A large number of other decisions support it.   There is no difference *in principle*, so far as the present question is concerned, between the cases in which sentences are all passed after all convictions have been procured and those in which one has been convicted and sentenced and is afterward tried and sentenced.   The reasons given in cases already cited apply with equal force to both, as will appear from decisions subsequently cited.   We have no statute which forbids the trial of one who has already been convicted and sentenced on another charge.

(a)   It has been suggested that, since Section 3697, Revised Statutes 1919, provides for successive terms of imprisonment when two or more convictions are secured before sentence is passed for either offense, this amounts to a prohibition against such sentences in any situation other than that covered by the statute.   This is a misconception of the meaning of the statute.   The section first appeared in our law in 1835 [Sec. 9, p. 213, R. S. 1835.]   It seems to have been taken from the Revised Statutes of New York of 1829, in which (2 N. Y. R. S. 1829, sec. 11, p. 700) appears a section identical in legal effect and almost identical in words and even punctuation.   In this country it was then generally held that in order to impose cumulative sentences it was necessary for the subsequent sentence or sentences to contain a direction to that effect.   [19 Encyc. Pl. & Pr., p. 484.] A failure so to direct in such sentences was "fatal to any imprisonment which exceeds that of a single sentence." Courts sometimes inadvertently omitted the direction and at other times did not make it sufficiently certain to be effective.   This statute was devised to put an end to miscarriages of the kind in so far as situations described in the statute are concerned.   The purpose of the statute was merely to provide that in the cases it covered the sentences should run successively *by force of the statute itself* and not be dependent for their cumulative charac-

ter upon any action of the trial court specially referable
to that matter. The language of the statute itself evi-
dences this. The decisions hold this is its effect. This
is emphasized by the previous state of the law and the
frequent abortive attempts of courts to impose cumu-
lative sentences. However, we are not left to grope for
evidence to support our conclusion. The New York re-
vision of 1829 was prepared by a revision commission of
eminent and learned lawyers acting under legislative
authority. When they had prepared an act for the re-
vision of a chapter or title of the statutes, they subjoined
explanatory notes which accompanied the act when pre-
sented to the Legislature for consideration and enact-
ment. These notes customarily pointed out the existing
state of law, and then explained the reasons and need
for changes recommended. These notes were published
in connection with the New York Revised Statutes of
1836, Vol. III, p. 421 et seq. On page 834 of that vol-
ume appears the "original note" of the revisers respect-
ing Section 11 (N. Y. R. S. 1829, 700) of Title VII, which
covered "general provisions concerning crimes and their
punishment." (Which title was adopted, almost in ex-
act words, in our Revised Statutes of 1835.) The "orig-
inal note" of the revisers explanatory of their recom-
mendation that Section 11 be added to the statutes of
New York was as follows: "New in Form: *Generally
declared in the sentence, but as it may be omitted,* it is
deemed useful to provide for it *by law.*" (Italics ours).
This language means simply what it says. It is clear
from it that the power to impose cumulative sentences
already existed in the courts of New York and that the
purpose of the statute was to make them cumulative (in
the described cases) by force of the statute. The statute
did not purport to give the courts any power to impose
cumulative sentences. It took from them the power, in
certain cases, to impose any sentence *other than* a cumu-
lative one. It did this by writing itself into every sen-
tence, in the kind of cases it described, as a part of such

sentence. And so it has been held. [Ex parte Durbin, 102 Mo. l. c. 102; People v. Forbes, 22 Cal. l. c. 138.]

(b)  In addition to pointing out that no statute forbids a trial of one in relator's situation, the decisions call attention to the fact that the constitutional guaranty of a speedy trial makes no exceptions. It includes one who is under sentence just as much as any

Constitutional Guaranty: Speedy Trial.

other. The invention of rules which will constitute amendments of plain and unequivocal language of the Constitution is not work for which the Constitution constitutes courts. The suggestion in the Meyers Case that one who had been convicted and sentenced was "in another custody" and that this, for some unstated reason, would prevent his trial on a second charge until he had completed his first term, is answered and had then been answered by authorities heretofore and hereafter cited. This is true also of the intimation that such a second trial might in some way interrupt his service of his first term and thereby prolong his punishment. Whether one who has been convicted and sentenced could be held in jail until a later term for trial on another charge is not a question in this case. Nor was it involved in the Meyers Case in such way as to call for decision. What remedy a prisoner might have to compel his own transportation to the penitentiary at once upon sentence, or to demand that the time he has been held after sentence be counted as a part of his service under the sentence, has nothing to do with the jurisdiction of a court to try him when he is present in it at the trial, and has nothing to do with the question of the regularity of the trial, as the decisions will show.

Earlier cases have been cited and quotations made from them. Later cases approve the same principle. In Ponzi v. Fessenden, 258 U. S. l. c. 264 et seq., the court was discussing this question (certified to it by the U. S. Circuit Court of Appeals): "May a prisoner, with the consent of the Attorney-General, while serving a sen-

tence imposed by a district court of the United States, be lawfully taken on a writ of *habeas corpus*, directed to the master of the House of Correction, who, as Federal agent under a *mittimus* issued out of said district court, has custody of such prisoner, into a state court, in the custody of said master and there put to trial upon in- dictments there pending against him''? In answer the court, in an opinion by Chief Justice TAFT, in which all the justices concurred save one, among other things, said:

"One accused of crime, of course, cannot be in two places at the same time. He is entitled to be present at every stage of the trial of himself in each jurisdiction with full opportunity for defense." (Citing cases.) "If that is accorded him, he cannot complain. The fact that he may have committed two crimes gives him no im- munity from prosecution of either. . . . The authori- ties, except when special statutes make an exception, are all agreed that the fact that a defendant in an indictment is in prison serving a sentence for another crime gives him no immunity from the second prosecution. One of the best considered judgments on the subject is Rigor v. State, 101 Md. 465, 61 Atl. 631, 4 Ann. Cas. 719. The Supreme Court of Maryland said, at page 471 of 101 Md., at page 634 of 61 Atl. (4 Ann. Cas. 719): 'The peniten- tiary is not a place of sanctuary; and an incarcerated convict ought not to enjoy an immunity from trial mere- ly because he is undergoing punishment on some earlier judgment of guilt.'

"Delay in the trial of accused persons greatly aids the guilty to escape because witnesses disappear, their memory becomes less accurate and time lessens the vigor of officials charged with the duty of prosecution. If a plea of guilty and imprisonment for one offense is to postpone trial on many others, it furnishes the criminal an opportunity to avoid the full expiation of his crimes. These considerations have led most courts to take the same view as that expressed in the case just cited. [Cit- ing cases.]

"It is objected that many of these cases relate to crimes committed in person during service of a sentence. The Maryland case did not, nor did some of the others. But the difference suggested is not one in principle. If incarceration is a reason for not trying a prisoner, it applies whenever and wherever the crime is committed. The unsoundness of the view is merely more apparent when a prisoner murders his warden, than when he is brought before the court for a crime committed before his imprisonment. It is the *reductio ad absurdum* of the plea.

"Nor, if that be here important, is there any difficulty with respect to the execution of a second sentence. It can be made to commence when the first terminates. [Kite v. Commonwealth, 11 Metc. (Mass.) 581, 585, an opinion by Chief Justice SHAW; Ex parte Ryan, 10 Nev. 261, 264; Thomas v. People, 67 N. Y. 218, 226.]

"But it is argued that when the prisoner is produced in the superior court, he is still in the custody and jurisdiction of the United States, and that the state court cannot try one not within its jurisdiction. This is a refinement which if entertained would merely obstruct justice. The prisoner when produced in the superior court in compliance with its writ is personally present. He has full opportunity to make his defense exactly as if he were brought before the court by its own officer. [State v. Wilson, 38 Conn. 126, 136.] The trial court is given all the jurisdiction needed to try and hear him by the consent of the United States, which only insists on his being kept safely from escape or from danger under the eye and control of its officer."

The cases cited support the ruling with unanswerable reasons. In Rigor v. State, 101 Md. 465, approved in the Ponzi Case, it appeared that Rigor was indicted for an assault to kill, and before trial was convicted in another court on another charge, sentenced to the penitentiary and incarcerated therein. He was afterward by writ of *habeas corpus* brought into the court where the indictment for assault to kill was pending and was

there tried, convicted and sentenced for a term to begin on the expiration of the first sentence. The court held this was without error, and, in response to an argument like that made here by relator, said:

"It is contended that a writ of *habeas corpus* cannot be used to bring a convict from the penitentiary into the criminal court for trial upon an indictment there pending against him, while he is serving a sentence of imprisonment under a conviction of felony entered against him in another court of the State; and the error complained of is that the criminal court refused to quash the writ of *habeas corpus*. Assuming, for the moment, that this court has authority to review the ruling thus made, there can be no doubt as to the correctness of the court's action. A writ of *habeas corpus* will bring a convict from the penitentiary into court, not for the purpose of having the cause of his detention inquired into, but either because he may be needed as a witness, or because a pending indictment against him ought to be heard and determined. The penitentiary is not a place of sanctuary; and an incarcerated convict ought not to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt. Why should there be a delay in bringing to trial, on an indictment pending against him, a convict who has not yet completed the service of a previous sentence? No reason can be suggested for such a delay in the case of a convict adjudged guilty of some other offense and actually in execution of a sentence thereunder, that does not apply equally to an individual who has been indicted but has not yet been tried. The situation of the two is identical except for the single circumstance that in the first instance the criminal who has more frequently violated the law has been tried and convicted for some of his offenses, whilst the other has not. It is not the policy of the law to encourage the commission of crime. Delay in administering the criminal law and in inflicting punishment promotes crimes as observation and common experience abundantly

demonstrate. And if the courts should hold that one already convicted and actually incarcerated under sentence, could not be brought before the court on a writ of *habeas corpus* and tried for some other offense, until the expiration of the first sentence, a temptation to commit a crime for the express purpose of escaping altogether or at least deferring punishment for a previous one, would be held out to the evilminded and depraved. Suppose, for instance, that a homicide had been committed and the assassin has escaped and that for the time being a suspicion does not point to him but is directed towards another. Suppose that the real criminal returns to the scene of the murder and in the vicinity commits a larceny and is arrested therefor and pleads guilty and is sentenced to confinement for eight or ten years in the penitentiary; and that after beginning to serve out that sentence, evidence is discovered which indicates that he was the murderer. Suppose further he should, when confronted with the evidence inculpating him, confess his guilt, and that he should then be indicted for the crime of murder. Would any court hesitate to issue a writ of *habeas corpus* directed to the warden of the penitentiary requiring him to produce the convict so that the latter might be put upon trial for the capital offense? Can it be possible that the court would be so hopelessly impotent, in such circumstances, as to be unable to do anything until the expiration of the sentence of eight or ten years; by which time the main witnesses might be dead, and the ends of justice might be defeated? And yet, if the contention made in the case at bar is sound, the arm of the criminal law would be paralyzed—not a step could be taken towards prosecuting him so long as the convict remained sheltered within the walls of the penitentiary. That is not the law. The criminal court had jurisdiction to bring the plaintiff in error before it under a writ of *habeas corpus* and to place him on trial under the indictment there pending against him. [Re Wetton, 1 Cromp. & Jarvis, 459.] In Regina v. Day, 3 F. & F. 526, it was

held that the court will not grant an application for a *habeas corpus* to remove a prisoner from gaol, where he is undergoing sentence, in order, to take him before a magistrate in another county, to prefer another charge against him; but will grant a *habeas corpus* to bring him up for trial on a true bill being found against him at the assizes on that charge.  [State v. Wilson, 38 Conn. 126; People v. Flynn, 7 Utah, 378; Ex parte Ah Men, 77 Cal. 202; 15 Am. & Eng. Ency. Law  (2 Ed.) 191.]''

An analogous ruling was made in Gaines v. State (Tex. Cr. App.), 53 S. W. 623.  Authorities in support of the use of *habeas corpus* in like circumstances can be found in the note to the Rigor Case in 4 Ann. Cases, 1. c. 723.

In Commonwealth v. Ross, 28 Pa. Co. Ct. 276, the court said:

''We think that we can with propriety resort to this mode of procedure for bringing the prisoner into court for the purposes of this trial, and that we are not bound to await the termination of a sentence of seven years and nine months that the prisoner is now undergoing under sentence of a court of another jurisdiction.  The prisoner's presence in court is necessary.  He is not taken out of the custody of the warden, but still undergoing his sentence while he is here for the purposes of the disposition of the pending issue.''

In Flagg v. State, 11 Ga. App. 1. c. 40, the Court of Appeals of Georgia said:

''We come, therefore, to the last point, which is the real ground upon which the State's counsel seeks to uphold the judgment of the trial court.  There is no statute of this State which expressly authorizes the court to take into custody and put on trial a person already serving a sentence under an indictment upon which he has previously been tried.  The General Assembly enacted a statute providing machinery for bringing a convict into court to testify as a witness, but it was expressly declared that the proceeding authorized by the act should

be cumulative. [Penal Code (1910) secs. 1180-1184.] It cannot be doubted that under the court's inherent power, there is ample authority, irrespective of this statute, to procure the attendance of convicts as witnesses. At common law the writ of *habeas corpus* was used for this purpose, as well as to remove a prisoner from one jurisdiction to another, where his presence was needed. [3 Bl. Com. 130.] When a convict is serving a penal sentence he is in the custody of the State or its authorities. In a sense he is the property of the State; his labor belongs to the State. Having forfeited his right to freedom, he is completely under the dominion and control of the State, with no rights save those which the law in its humanity may accord him. It would indeed be remarkable if the State, which has full power to reach out and bring into court one of its citizens while in the full enjoyment of his liberty, could not find a process by which one of its convicts could be brought into court for any purpose for which his presence could lawfully be required. We have not the slightest doubt of the full and complete power of courts to adopt appropriate measures to obtain a convict's presence in any proper case."

In Commonwealth v. Ramunno, 219 Pa. St. l. c. 209, the court said:

"On the prisoner's other contention, not much ought to be said, for nothing can be said in support of it. At all times he was within the Commonwealth. By its process he had been committed to one of its penal institutions for a violation of one of its laws. It not only did not object to his being brought into the jurisdiction of one of its courts to answer a more serious charge than the one upon which he had been committed, but asked, at the instance of a district attorney representing it in his district, that his body should be produced, to be subjected to punishment upon a charge which he was called to answer, different and distinct from that for which he had formerly been convicted. The warden of the penitentiary having him in custody made no question as to the Com-

monwealth's right to take him away; and, under the circumstances, when he reached the jurisdiction in which he was to be tried for the most serious offense known to the law, it was none of his concern how he got there. A prison is not a place of refuge for a criminal. It is for his punishment, to which he is involuntarily committed, and the same power that commits him can take him from it when in the interest of justice he should be transferred elsewhere to answer for his misdeeds.''

In Arrowsmith v. State, 131 Tenn. l. c. 484, 485, it is said:

''There cannot be doubt that one under conviction and while imprisoned in the penitentiary may be brought to the bar for trial and sentenced for another crime, whether charged to have been committed before or during such imprisonment. This practice has been followed in this State and in this court, and many reported cases sustain it. [Thomas v. People, 67 N. Y. 218; People v. Majors, 65 Cal. 138; Henderson v. James, 52 Ohio St. 242; Rigor v. State, 101 Md. 465.]''

The court then quotes with approval and at length from the Rigor Case.

In the Tramner Case, 35 Nev. 56, is found a full discussion of the various phases of the question and citation of a wealth of authority. A note to this case in 41 L. R. A. (N. S.) 1095 et seq. contains further discussion of the matter.

In the face of these reasons and authorities it is impossible to defend a holding that there is any principle or rule whereby a conviction and sentence in one case prevents, by its own force, a subsequent trial, conviction and sentence in another case. The cases cited show that the means of securing the presence of such defendant for a subsequent trial are ample, well known, long practiced, and that such presence in no way deprives him of any right or of credit for time on his first sentence, but accords to him a speedy trial, as the Constitution guarantees. In Arrowsmith v. State, supra, it

was held that one who was imprisoned *must be tried* on other pending or subsequent charges or he would be discharged from them for failure to comply with the guaranty of speedy trial. The prisoner in that case was set free on that ground. In the Keefe Case the principle was approved. The effort to explain the Arrowsmith Case as based on the statute there cited cannot succeed. By Section 7250 of Shannon's Code it was "declared that a conviction for any one offense is not a bar to a prosecution for any other public offense committed previously, not necessarily included in the offense for which the defendant was convicted." This section does not declare anything respecting the power or right of Tennessee courts to try a convict during his existing term of imprisonment. In holding that one might be tried during such term, the court cited cases which discussed the principle involved, as appears from the excerpt above set out. It does not make Section 7250 the basis of its ruling on the question, though it quotes it. The reason is plain. That section deals with the matter of a sentence with respect to its effect as a bar to all prosecution of charges of previously committed crimes. The reason for its enactment is singular. In 1827 in Crenshaw v. State, Martin's & Yerger's Rep. 122, it was held that there was still in force in Tennessee the ancient doctrine of *autrefois attaint,* whereby a conviction, judgment and execution upon a felony not capital constituted a *bar* to any prosecution of the defendant for any previously committed non-capital felony. There were exceptions not pertinent here. The meaning of this was that such a conviction was in effect an acquittal of all charges founded upon such previously committed felonies. That is the only decision of its kind in this country, and all courts hold the contrary now. [Singleton v. State, 71 Miss. l. c. 788; People v. Flynn, 7 Utah, l. c. 381.] The statute in question, Section 7250 of Shannon's Code, supplanted the rule announced in Crenshaw v. State, and prevented one conviction of felony from *barring* prosecution of

another charge for a crime which had been previously committed. It had nothing to do with the question whether a prosecution of a convict must be stayed until the completion of the term fixed by a previous sentence.

IV. The suggestion that one who has been convicted and sentenced is civilly dead and for that reason cannot be tried for crime is without substance in principle and is denied by the decisions in this and all other jurisdictions. On principle no conviction of crime amends the convict's status except as part of the punishment, and no statute of this State declares against convicts any disabilities which have anything in them relevant to the questions in this case. In State v. Connell, 49 Mo. l. c. 289 (hereafter referred to in another connection), this court, in a case against a convict for a crime committed while under sentence, said:

Civiliter Mortuus.

"But the question here presented is a wholly different one. It is whether a criminal confined for one crime, who commits another and greater crime, to which the law affixes a severe penalty, shall escape his merited punishment. To say that he has an entire immunity is a proposition monstrous in itself. Notwithstanding a man may be sentenced and imprisoned for a criminal offense, he is still amenable to and under the protection of the law. Though laboring under disabilities as to his civil rights, the law assumes over him a control and guardianship. He is answerable criminally for his acts, and he is protected from injury or violence. The law regards him still as a living human being and as a responsible agent."

Other decisions in this State are to the same effect.

V. It is argued that the passage of certain other statutes supports relator's contentions. Three sections are cited. The one of 1897 which provides for the trial of one who while out on parole commits another crime,

Other
Statutes.
probably owes its enactment to the confusion of tongues in this court and to the fact that the parole system was new matter and one State had held that one under parole could not be tried. The section providing that a convict might be tried for crime committed under sentence was passed despite the fact that in the case of State v. Connell, supra, this court had already held that such conviction could be upheld under the law as it was then in force. The general statute which provides that a convict "in the penitentiary shall be under the protection of the law and any injury to his person, not authorized by law, shall be punishable in the same manner as if he were not under conviction and sentence," is nothing more than a statement of existing law. There is nothing preclusive in them. Certainly, a Legislature cannot by enacting a statute on the theory that that is not the law which in fact is the law, work the repeal of another provision or feature of the law which the statute so enacted does not purport to cover. These statutes do not affect such appeals. Nor is it logical to say that when remarks of this court indicate that it thinks a particular general rule is not the law, that the Legislature by revoking that decision in part only thereby establishes the rest of the rule as the law, whether or not it is or was the law in principle. These statutes in no way aid relator's cause.

VI. The Missouri cases must be examined in some detail because of the nature of one of the arguments advanced. Ex parte Meyers, supra, was decided in 1869. In 1870 the case of Ex parte Charles Turner, 45 Mo. 331, was before the court. Turner was convicted on the same day on two separate charges, but was not sentenced on

Missouri
Cases.
either until after both convictions were had. The case, therefore, came exactly within the description of the statute. [Chap. 207, sec. 9, R. S. 1865; now Sec. 3697, R. S. 1919.] The point made for Turner was that since the *sentences* did not specify that

he should serve the two terms one after the other, the terms ran concurrently, and since he had served a time equal to that prescribed in the longest sentence, he was entitled to his discharge.  The court held that the ver-- dicts of the jury fixed the time of imprisonment on each of the charges, and the *statute* decided "when the second term shall begin," and it was "wholly unnecessary for the court to decide it."  This ruling is in harmony with the decisions and with reason, and disposed of the only question in the case.  What the court remarked in a sentence in which it alluded to the Meyers decision was *obiter*.  The case before the court was within the statute. The Meyers Case was obviously not within it, and was by this court in that case itself expressly held not to be within it.  The question presented by counsel and decided in Ex parte Turner related solely to the effect of the statute upon the former rule that, in the absence of a statute, sentences on different charges would run concurrently unless the sentences themselves otherwise provided.  The Turner Case involved no question or decision which has anything to do with any question in the Meyers Case.

In 1871 in Ex parte Kayser, 47 Mo. 253, the court stated:

"It appears from the petition and exhibits in this matter that the petitioner was tried and convicted of the offense of grand larceny.  He was thereupon sentenced to two years' confinement in the state penitentiary.  On the same day he was tried, convicted, and sentenced in two other cases, the sentence being for two years' imprisonment upon each of the last two indictments.  The sentences in all of the cases were passed on the 17th day of January, 1868.  The prisoner asked to be discharged upon the ground that he has served out his time under the first sentence, the last two sentences being, as he avers, illegal and void.  The petitioner avers that he was tried, convicted, and sentenced, on the last two indictments 'some hours' after his sentence upon the first; and upon

that allegation is based the view that the proceedings upon the last two indictments were unwarranted.''

The opinion thenceforward mingles two arguments: one in which it distinguishes the Meyers Case on the ground that in that case the two sentences involved were passed at different terms; that the law does not take note of parts of a day; the other, that the record did not show that either sentence imposed upon Kayser was pronounced before his conviction in the other cases. The court asked, ''Where is the stress of justice in the matter that justifies the introduction of parol evidence to vary the legal import of the record? I fail to find it. The prisoner was convicted in each case upon his own confession of guilt, and is now attempting to escape from justice by a legal quibble. It is not justice that he seeks, but an escape from it.'' The prisoner was remanded. Now, if the prisoner was convicted in all three cases before he was sentenced in either, that was the end of the case, because the statute (now Section 3697) applied and made the terms successive. Nevertheless, if, as relator contends, the question is one of jurisdiction, it is impossible to understand what difference could be made by the fact that all sentences were passed on the same day if one sentence preceded conviction on the other charges. The doctrine that a part of a day is of no consequence is not one which could give jurisdiction to a court which could have no jurisdiction. The court did not decide the question whether oral evidence was competent to prove a fact upon which the records were silent in a case like that before it, but denounced the point and argument as a legal quibble. This decision is in fact not in full harmony with the Meyers Case, and certainly adds nothing to it which can aid relator.

In 1871 in Ex parte Brunding, 47 Mo. 255, the petitioner twice had been indicted for distinct felonies and had been convicted and sentenced to the penitentiary for two years on each. While serving these terms he escaped and while thus at large committed the offense of grand

larceny, and was thereupon indicted, tried and sentenced
on that charge and returned to the penitentiary. All of
this was before his first two terms had expired. He
served out the period of the first two terms, and then
sought his discharge on the ground that the last sentence
was "illegal, for the reason that he was already under
sentence." The court said that neither the statute, nor
the Meyers Case, nor the Turner Case had anything to
do with the question, and proceeded:

"The statute provides that where a prisoner is con-
victed of two or more offenses at the same term, the con-
viction in all cases must precede the sentence in either.
But here the prisoner was not in actual custody. He had
escaped and was free, and, true to his nature, he could
not enjoy liberty without committing crime; and to say
that, under such circumstances, there is no law to justify
his punishment, is rather a startling proposition. Es-
tablish the doctrine that an escaped convict may commit
any crime, and that he cannot be tried and punished be-
cause he rightfully ought to be in the penitentiary in-
stead of running at large, and it will lead to most dis-
astrous results. I am not aware of any *statutory pro-
vision* [italics ours] to support such a principle and coun-
sel have referred to none. It seems to be settled that a
prisoner under an unexpired sentence of imprisonment,
where he commits an offense, may be convicted, and
that the succeeding period of imprisonment will com-
mence on the termination of the period next preceding."

The court then cited 1 Bishop's Crim. Law, sec. 731,
and *note.* That is the identical section which then, as
now, declared that when one under an unexpired sentence
was again convicted, cumulative sentences could be im-
posed, and the note the court cited is the one which *at
that time* pointed out the singularity of the decision in
Miller v. Allen, 11 Ind. 389, on which James v. Ward,
supra, and the Meyers Case are founded. The opinion
in the Brunding Case refers to the fact that Brunding
was free (by escape) at the time he committed his third

offense. What had his being free when he committed the crime to do with the applicability of the rule in the Meyers Case if it is as petitioner in this case contends? Meyers was free when he committed both of his crimes. If previous sentence prevented Meyers from being tried for another offense, why did it have another effect in Brunding's Case? There is no distinction in principle. The fact is that the court was right in the Brunding Case, but its actual decision squarely overrules the Meyers Case if that is to be construed as relator construes it. The Supreme Court of the United States in the Ponzi Case, in a quotation set out above, points out that the principle for which relator contends must cover Brunding's Case as well as all other cases where one is under sentence, or it covers none of them.

In State v. Connell, 49 Mo. l. c. 289, this court upheld a conviction of a prisoner who while under life sentence for a previous crime killed a fellow convict, and was then tried and convicted of that offense and sentenced to death. No statute, such as we now have, at that time specifically authorized a trial of a convict for a crime committed while confined in the penitentiary. The court found the statute which declared that the person of a convict is under protection of the law and any injury to his person, not authorized by law, shall be punishable in the same manner as if he had not been sentenced or convicted, and bases its ruling thereon. It expressly held that the Meyers and Brunding cases had no bearing on the question before it, although it subsequently indulged in some observations which had no relevance to the case before it, but were designed to support the ruling in Ex parte Brunding. In other words, in *obiter dicta,* it again, by unavoidable implication, disapproved the rule for which relator contends. Connell's conviction was affirmed.

In Ex parte Bryan, 76 Mo. 253, the case was found to fall within the statute and outside the Meyers Case, and the prisoner was remanded. The petitioner in Ex

parte Jackson, 96 Mo. 116, met no better fate. The court
expressly held his case did "not resemble that of Ex
parte Meyers, 44 Mo. 279, in any particular, and counsel
have grossly misconceived that case." It then, neverthe-
less, proceeded to construe the decision which it had just
said had nothing to do with the question before it. In
the course of its remarks it ought to be noted that it  said
Section 1659, Revised Statutes 1879 (now Sec. 3697, R.
S. 1919) was "but declaratory of the rule prevalent at
common law," which is eminently true, as has already
been pointed out.

It appears, with an exception to be noted, that until
in State v. Buck, 120 Mo. 479, l. c. 497, no prisoner ex-
cept Meyers had ever been able to escape punishment
under the Meyers Case rule. The court always was able
to enter a remanding order on some theory. In the Buck
Case, in which the appellant had been tried after sen-
tence had been imposed, pursuant to a previous convic-
tion of felony, this court held that the trial court "com-
mitted error" in overruling the motion for a new trial
and in compelling Buck to go to trial where the judg-
ment and sentence against him in the first case remained
in full force and effect. The judgment was reversed and
the case remanded. In State v. Jolly, 96 Mo. 435, a like
result was reached, but the concurrences were such that
the opinion adds no light on the question. It has already
been pointed out that in Ex parte Allen, 196 Mo. 226, it
was expressly held that the rule did not affect the *juris-
diction* of a court to try one under sentence, and in that
case Allen was remanded to serve out his two terms suc-
cessively, though his second conviction occurred after
the first sentence had been pronounced. This case has
been considered in another connection.

State v. Bell, 212 Mo. 130, is to be read in connection
with what is said in Ex parte Allen, supra, and does not
help relator. In State v. Jennings, 278 Mo. l. c. 551, there
appears in the opinion by WILLIAMS, J., what seems to be
an intimation of a doubt concerning what remained of

the Meyers Case rule. State ex rel. Stevens v. Wurdeman, 295 Mo. 566, calls attention to the fact that Missouri stands alone on the rule, but disposes of the case of Stevens on grounds which did not require any discussion of the Meyers Case. It showed that Stevens was entitled to be discharged even if he could not be tried while under sentence. It was obvious he was so entitled if he could have been tried. It is to be noted that the case of Miller v. Allen, 11 Ind. 389, has been the subject of remarks in the court which decided it. [Peed v. Brewster, 168 Ind. l. c. 53.]

VII. It is contended, in effect, that though it be conceded the words of the statute (Sec. 3697) do not mean what relator contends they do mean, yet they were given that meaning by construction by this court in the Meyers Case and subsequent cases; and since the statute has been subsequently re-enacted in the same form at revision sessions, the construction given it has thereby been worked into it and has become a part of it, under the familiar rule. [Ex parte Durbin, 102 Mo. l. c. 102, 103.]

Construction of Statute: Legislative Adoption.

One answer is that the Meyers Case, as already shown, did not construe the statute to cover the facts before it or to account for the rules it stated or applied. It expressly held the statute did not apply. It was not because the statute required it that it said or held what it did say or hold; it was because there was no statute which covered the case that it said Meyers could not be tried after sentence. This meant that the court thought that the law, in the absence of a statute authorizing it, did not permit other trials and convictions after sentence for crime; and since there was no statute in Missouri authorizing it, it suggested Meyers's second sentence was bad. It in no way construed the statute to bring about this result or intimated that it thought it did. Its ruling was based upon the fact that *there was no statute* which

applied.  Obviously, a construction of a statute cannot be worked into it by re-enactment until there has been a construction of it, and, as obviously, the construction which is worked into it by reenactment must be the one given it and no other.  This applies to the rule in the Buck Case, as well as all others relating to the question. The sole basis of the whole series of errors in what the court has said in these cases is simply and only its mistake concerning the existence of a rule of practice with respect to criminal trials.  So far as relator's case is concerned, he could in no event be helped by any number of re-enactments.  This follows from the fact that he contends the rule denies *jurisdiction,* and must so contend in this case.  But this court has expressly held that there never was any such construction of the statute as that.  It is not possible that a construction which never was made can become a part of a statute by re-enactment of that statute.  In addition, there has been no re-enactment of the statute since 1889.  The Buck Case was decided in 1893.  It follows that even the rule as interpreted in the Buck and Allen cases is not fortified by any re-enactment of the statute.

But the ruling should be put on the broader ground, and an end be put to this false doctrine which has neither statute, logic nor well-considered precedent to support it.  The circumstances of this case call, with unusual insistence, for a re-establishment of the correct rule of law in this State.  Under the ruling in State ex rel. Stevens v. Wurdeman, supra, it is settled that the statute requiring speedy trial of persons charged with crime will bring about relator's practical acquittal (State v. Wear, 145 Mo. 162) on many or all of the charges against him, save the first conviction, if he is not tried within the period fixed by that statute, whether he is in prison or out.  If this erroneous rule, now sought to be applied by relator to prevent the prosecution of other charges against him after sentence on one, is upheld, then he cannot be tried while under sentence.  It is difficult to

see how the combination of the statute with this erroneous rule, for which this court alone is responsible, can fail to constitute grave danger that it will operate to exempt relator from trial and, if guilty, from punishment on most of the many charges against him without putting the cases in such condition that the statute of limitations will bar them and bring about an equivalent result. In no event does this case call for this court to overrule the Buck and Allen cases to reach the result relator desires, and that is necessary if that result is to be reached.

The rule is wrong, is but a residue of the old doctrine of *autrefois attaint* which never applied in this country and which this court would reject as quickly as any other tribunal if it appeared under its true name, and should be disavowed in its whole extent.

The preliminary rule in this case should be and is discharged. *David E. Blair, White* and *Ragland, JJ.,* concur, *Ragland, J.,* in a separate opinion; *Graves, C. J., Walker* and *Woodson, JJ.,* dissent, *Graves, C. J.,* and *Woodson, J.,* in separate opinions.

RAGLAND, J. (concurring).—I concurred in the original majority opinion in this case. I did so solely because of the diffidence I felt in repudiating a rule of procedure that had been accepted and followed for so many years in this State. Upon an investigation of it with respect both to its origin and its practical operation, suggested by a dissenting opinion, I came to the conclusion that its age was the only attribute it had to commend it, and that on the other hand its observance was becoming a serious obstruction to the administration of the criminal law. I thereupon withdrew my concurrence in the ruling that would continue it in force.

I quite agree with my Brother GRAVES, and the other distinguished jurist whose language he quotes, that "the days of any court ought to be numbered whenever it yields by the tithe of a single hair to any other con-

siderations except those arising on the record.'' But I do not agree that ''public clamor alone'' is in and of itself a sufficient justification for a court to refuse to re-examine and reconsider the grounds of a ruling against which it is directed. The court or judge who bases such a refusal upon that ground yields, it seems to me, to ''other considerations except those arising on the record.''

Courts are not infallible. Nor is the law, as was formerly considered, the emanation of pure reason. It is a process, an evolution, growing out of the demands and needs of a constantly changing and developing social order. It at all times presents the paradox of re-quiring both stability and change in order to function properly. To give it effect in this dual aspect under the limitations imposed upon them is the difficult role of the courts. It is much easier to maintain the stability of the law, its uniformity and certainty, which may be done by merely following established precedents, than it is to respond to the insistent demands of changed conditions, which may require an entirely new application of old principles, or a complete abandonment of what has be-come archaic. Oftentimes just plain inertia makes it difficult to leave the beaten path. When therefore a rule of procedure which has long been accepted and followed is suddenly assailed by ''clamor or otherwise,'' as operating to defeat the essential interests of society, a court may well take pause and consider whether there should be a re-examination and a re-appraisal of the grounds upon which the rule rests. Such a re-examina-tion was had with respect to the rule involved in this case and the conclusion reached that it has the support of neither reason nor authority. If in addition it oper-ates as a hindrance to the efficient enforcement of the criminal law, as abundantly appears, a continued ad-herence to it is indefensible. I fully concur in the present majority opinion which was adopted after the case was re-argued.

GRAVES, C. J. (dissenting).—We desire to add but little to what we said in our opinion upon the order granting the rehearing.

I. So much is said about the jurisdiction of a circuit court to try felonies, that one would conclude this question had never been thought of until the new rule was announced in what is now the majority opinion.

Jurisdiction. What Judge WAGNER, in the Meyers Case, said, was that he knew of no law giving a circuit court the right to hold over one sentenced at a given term of court until a succeeding term and then try him upon a charge pending prior to the first sentence. This was saying in legal parlance that he knew of no law conferring such a jurisdiction, power or right, whatever name you choose to use. Judge WAGNER added that this man's place was in the penitentiary, and not in a county jail, after a penitentiary sentence had been passed. This is rather a sensible observation. He perhaps thought that when one gets to the penitentiary he would then be within the jurisdiction of executive clemency only, and not within the jurisdiction of any court, for further trial. We speak of the person of the criminal, and also its bearing upon his rights. Other cases speak of a defendant sentenced, but out upon appeal bond, being within another jurisdiction (State v. Buck, 120 Mo. l. c. 496), and there is not so much foolishness about these old ideas. When the prisoner in the circuit court appeals, and gives bond to appear in this court for judgment, it is not so far-fetched to say that such convict is within a jurisdiction different from a circuit court. A long line of old cases (in fact all cases up to the present time) so viewed it. It is not without reason, because it could well be concluded that the convict should respond to the judgment of the Supreme Court first. We have cited the cases more in detail in our opinion dissenting from the order for re-hearing and shall not go further now. Suffice it to say that those cases went to the juris-

diction of the circuit court. Jurisdiction means the present legal right to try, hear and determine a cause. It cannot be urged that these cases were not dealing with jurisdiction. Out of them all can be deduced the rule that one under sentence to the penitentiary cannot, at a later term of the court, be tried upon a charge of a crime committed before the sentence. This was the first branch of the rule, but other cases added thereto the additional rule that one did not have to be sentenced at the particular time or term, and that the State could procure as many verdicts of guilt prior to sentence as the State desired. We shall not rehash what was in our first opinion.

II. At the re-hearing of the case it was frankly admitted by the learned Assistant Attorney-General having charge of the case, that what has been called the Missouri rule of law, involved here, was as fair to the State as the rule of law in other states of this Union. This is a matter which cannot be disputed. Under the old Missouri rule, there was no limit to the number of convictions, if the prosecuting officers and trial judge observed the rule. The fault was not in Missouri law, but in the non-observance of Missouri law. The situation in these Meininger cases was not occassioned by laws favorable to criminals, but by the non-observance of laws and rules of conduct favorable (admittedly so by the representative of the State in this court) to the State in the punishment of offenders. Under all the facts the rule now announced is an emergency rule to meet the delinquencies of officers concerned with the cases before the advent of this case here. I am opposed to emergency opinions from and by any court. If an emergency, such as we have in these cases, will justify the overturning of a rule of law in all respects favorable to the State, and one of such long standing, then some other emergency may call for up-rooting some other law, and so on, *ad infinitum*. Emergencies arising either

*Emergency Rule.*

from willful or ignorant neglect of lower officials, should not furnish the basis for changing the existing law. If the existing law was unfair to either the State or the defendant, we would have a different question for discussion.

For these reasons, and for those expressed in my opinion on the order granting a re-hearing, I dissent. *Walker* and *Woodson, JJ.,* concur in these views.

WOODSON, J. (dissenting).—I also dissent because Section 28 of Article II of the Constitution provides that the right of trial by jury, as heretofore enjoyed, shall remain inviolate.

The words a, "jury as heretofore enjoyed" have uniformly been held to mean a jury of the defendant's peers, which has been defined by Webster to mean: "Peer: One of the same rank, quality, endowments, etc., an equal; match." If this opinion is declared to be the law, it will deprive the defendant of a trial by a jury of his peers, or compel the State to try him before a jury of convicts.

The foregoing observations are the necessary corollary of the rule of the common law that a person could not be tried again after sentence had been pronounced against him.