Douglas CALVIN, Respondent,

v.

**MISSOURI DEPARTMENT OF CORRECTIONS, Appellant.**

No. WD 69157.

Missouri Court of Appeals, Western District.

Jan. 13, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 3, 2009.

Ronald S. Ribaudo, Asst. Attorney General, Jefferson City, MO, for appellant.

Jeannie Willibey, Asst. Appellate Defender, Kansas City, MO, for respondent.

Before HAROLD L. LOWENSTEIN, P.J., VICTOR C. HOWARD, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

The Missouri Department of Corrections appeals the circuit court's judgment declaring that Douglas Calvin has served every day of his five-year sentence for criminal nonsupport. The department contends that the circuit court improperly credited Calvin with time he served in prison on an unrelated sentence that was later vacated. We affirm.

## Facts

The parties stipulated to the facts. In January 1997, Calvin pleaded guilty to the class D felony of criminal nonsupport ("the 1996 case"). The court sentenced him to five years in prison but retained jurisdiction under the 120–day callback rule and ordered Calvin to complete the department's drug treatment program. Calvin began serving his sentence on January 9, 1997. On May 15, 1997, after Calvin successfully completed the drug treatment program, the court suspended execution of the five-year sentence and released Calvin on probation.

In July 1998, Calvin pleaded guilty to another charge of the class D felony of criminal nonsupport ("the 1998 case"). The court continued his probation in the 1996 case, suspended the imposition of sentence in the 1998 case, and placed him on probation for five years. Calvin subsequently absconded from probation and failed to pay child support.

On July 12, 2002, Calvin surrendered his probation in the 1996 case and admitted absconding and failing to pay child support. The court ordered execution of the five-year sentence on the 1996 case. On the same day, the court revoked Calvin's probation in the 1998 case and ordered him to serve two years in prison consecutively to his five-year sentence in the 1996 case.

Calvin filed a Rule 24.035 motion for post-conviction relief in the 1998 case. This court reversed the circuit court's denial of the motion after finding that there was not a sufficient factual basis for his guilty plea and, thus, the plea was not knowingly and voluntarily entered. This court vacated the 1998 felony conviction and sentence for criminal nonsupport and remanded the case to the circuit court.[1]

1. On March 27, 2007, Calvin appeared before the circuit court on remand of the 1998 case. He pleaded guilty to the class A misdemeanor of criminal nonsupport, and the court sentenced him to one year in jail. The court did not order the sentence to run consecutively to any other sentence, and the court gave Calvin credit for "one (1) year already served." Based on our holding in this case, Calvin's conviction and sentence on remand would have been *after* he had completed his 1996 sentence on January 20, 2007. While there may be questions about whether he is entitled to credit for time served on his misdemeanor

*Calvin v. State*, 204 S.W.3d 220, 228 (Mo. App.2006). At the time of the reversal, Calvin was still in the custody of the department on both the five-year 1996 sentence and the two-year sentence from the 1998 case.[2]

Before the vacation of the conviction and sentence in the 1998 case, the department had calculated Calvin's maximum release date on the five-year 1996 sentence to be January 20, 2007. On the 1996 sentence, Calvin had served 126 days in department custody in 1997, under the 120–day call-back rule, and forty-six days in the county jail, and he had been continuously in the custody of the department since July 12, 2002.

After this court vacated the conviction and sentence in the 1998 case, the department recalculated Calvin's maximum release date for the 1996 case to be July 28, 2008. As improbable as it may sound, the vacation of the 1998 conviction caused the maximum release date to be actually pushed back a year and a half. Under the department's theory, which is set forth in detail below, the 556 days Calvin served from May 21, 2005, through November 28, 2006 (the date of this court's mandate in the 1998 case), could apply *only* to his two-year 1998 sentence (the vacated sentence). It could *not* be applied to his earlier five-year sentence, according to the department, despite the fact that the 1998 sentence was vacated. This is because, says the department, the 1998 sentence remained valid until the date of the mandate.

On December 14, 2006, the day after Calvin was conditionally released to a half-way house operated by the department, the department notified Calvin that his recalculated maximum outdate on the 1996 sentence was July 28, 2008, and not January 20, 2007. Thus, he learned in December 2006 that his success in getting his 1998 felony conviction reversed had actually resulted in *extending*, not shortening, his maximum release date. A month and a half later, Calvin walked away from the halfway house and did not return. The department issued a parole violation warrant for Calvin, but evidently Calvin has not been arrested on the warrant.

Calvin then filed a petition for declaratory judgment asking the court to declare that he had served every day of his five-year sentence in the 1996 case, and that the 1998 sentence must be disregarded, and that the department has no legal authority to maintain custody or control over him or arrest him for the 1996 sentence. The circuit court granted his petition, and the department appeals.

## Discussion

The department says the trial court erred in granting Calvin's petition for declaratory judgment after finding that he had completed every day of his five-year sentence on his 1996 conviction. According to the department, Calvin's five-year sentence would not be completed until July 28, 2008, due to the effect of the 1998 sentence, which was not vacated until 2006.

### *Standard of Review*

We review the circuit court's declaratory judgment to determine whether

---

2. At the time of the reversal, Calvin also was serving time on another sentence that was running concurrently with the 1996 sentence. As of February 3, 2007, Calvin had completed that sentence and was being held only on the five-year 1996 sentence.

sentence (*see* section 558.031.4), that is unrelated to what we are asked to decide here, *i.e.*, whether his 1996 sentence was completed on January 20, 2007. It is unnecessary for us in resolving this appeal to determine whether the circuit court properly granted Calvin credit for time served.

or not it is supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). When, as in this case, the parties submitted the case to the circuit court upon stipulated facts, we determine only whether or not the circuit court drew the proper legal conclusions from those facts. *Carlyle v. Mo. Dep't of Corr.,* 184 S.W.3d 76, 79 (Mo.App.2005).

### The Department's Argument

■ The department's theory derives from section 558.011.4(1) [3] and 14 CSR 80–2.040(4). Section 558.011.4(1) provides that "[a] sentence of imprisonment for a term of years for felonies other than dangerous felonies ... shall consist of a *prison term* and a *conditional release term.*" (Emphasis added.) The department rule at Mo.CODE REGS ANN. tit. 14 section 80–2.040(4) (2006) stated at the time: [4]

> An inmate with a consecutive sentence shall be held until the inmate completes the prison term of the consecutive sentence(s). The conditional release terms taken together shall constitute the time to be served on conditional release.

According to the department, these two provisions, taken together, mean that an inmate with consecutive sentences must first complete the prison term portion of both sentences (in consecutive order) before he begins serving the conditional release portion of the first sentence (to be followed by the conditional release portion of the second). If sentence "2" is later vacated, the inmate is not credited on sentence "1" with any incarceration time he served under sentence "2" before it was vacated.

The department acknowledges that on his 1996 sentence, Calvin was entitled to 126 days of prison credit (for time served in the drug treatment program in 1997) and 46 days of jail-time credit. The department contends that after Calvin was returned to prison on July 12, 2002, he finished serving the "prison term" portion of his 1996 five-year sentence on May 20, 2005. Then, on May 21, 2005, Calvin began serving the "prison term" portion of his two-year sentence in the 1998 case. Thus, the department says, the 556 days that he spent in prison from May 21, 2005, to November 28, 2006 (the date of our mandate vacating his 1998 sentence), could apply only to the "prison term" portion of his 1998 sentence. It could not be counted toward the "conditional release" portion of his 1996 five-year sentence, despite the fact that the 1998 sentence was vacated, according to the department. Under the department's theory, Calvin's sentence on the 1998 case remained valid until the date this court issued its mandate vacating the conviction and sentence. As a result, the department contends that after November 28, 2006, Calvin still had the 20–month "conditional release" portion of the five-year 1996 sentence yet to serve, making his new release date July 28, 2008. The department says the trial court erred in finding that Calvin had served every day of his five-year sentence when he walked away from the halfway house in February 2007.

The department relies primarily on two cases, *State ex rel. Meininger v. Breuer,* 304 Mo. 381, 264 S.W. 1, 5 (1924), and *Ex Parte Jackson,* 96 Mo. 116, 8 S.W. 800, 801 (1888), that discuss a principle recited in a very old Massachusetts case, *Kite v. Commonwealth,* 52 Mass. 581, 585 (1846). The

---

3. Revised Statutes of Missouri (RSMo), Cumulative Supplement 2007.

4. Mo.CODE REGS ANN. tit. 14 section 80–2.040(4) (2006) was rescinded on March 30, 2008.

department points to the following passage from *Kite:* "Nor will it make any difference, that the previous judgment is reversed for error. It is voidable only, and not void; and, until reversed by judgment, it is to be deemed of full force and effect ..." 52 Mass. at 585. This passage appears in a discussion about when the second of two consecutive sentences would begin in the event that the first is reversed or otherwise rendered invalid. *See id.*

The department also says section 558.031.1 [5] "prohibits" it from crediting the 556 days toward Calvin's 1996 sentence. The department appears to be relying on language in section 558.031.1 that guarantees credit for time served "after the offense occurred and *before the commencement of the sentence* " (often referred to as "jail-time credit"), provided that such credit shall be applied only once as to consecutive sentences.[6] (Emphasis added.) The department misinterprets the effect of this statute. The only circumstance it forbids is the doubling up of jail time credit when there is more than one offense. The main function of the statute is to give credit; it does not remove it or prohibit the giving of credit in circumstances not addressed in the statute. Therefore, we agree with the trial court that 558.031.1 does not prohibit any crediting of the 556 days to Calvin's 1996 sentence.

Quoting from the first sentence of section 558.031.1, the trial court noted that "[a] sentence of imprisonment *shall commence when a person convicted of a crime in this state is received into the custody of*

the department of corrections." (Emphasis added.) The court found, based on this language, that when Calvin was received back into the department of corrections on July 12, 2002, his five-year 1996 sentence began to run again on that date and continued to run until its expiration on January 20, 2007. Calvin remained in custody continuously until February 3, 2007. The court stated:

> Section 558.031 provides no legal basis for the position that the [department] should go back and stop the sentence for 556 days (during his continuous incarceration in state prison) and then start the sentence again.

The court noted that at the time of the reversal of Calvin's 1998 sentence, the department had already determined his maximum outdate on the five-year 1996 sentence to be January 20, 2007. Observing that it was only *after* this court vacated the 1998 sentence that the department moved his maximum outdate to July 28, 2008, the court found such a result contrary to Section 558.031, RSMo, and basic notions of fairness. The court also noted that "criminal statutes must be 'construed strictly' against the State and liberally in favor of the defendant," quoting *State v. Jones,* 899 S.W.2d 126, 127 (Mo.App.1995).

The trial court was not impressed by the department's reliance on the rule of *Kite v. Commonwealth,* 52 Mass. 581. The court noted that many courts have rejected the *Kite* rule on fairness grounds and because it was *dictum,* and have determined that when an earlier sentence is set aside, a

---

5. RSMo 2000.

6. Section 558.031.1 reads in its entirety:
   A sentence of imprisonment shall commence when a person convicted of a crime in this state is received into the custody of the department of corrections or other place of confinement where the offender is sentenced. Such person shall receive cred-
   it toward the service of a sentence of imprisonment for all time in prison, jail or custody after the offense occurred and before the commencement of the sentence, when the time in custody was related to that offense, except:
      (1) Such credit shall only be applied once when sentences are consecutive[.]

later consecutive sentence begins to run from the date of imposition of the later sentence. *See, e.g., Brown v. Comm'r of Corr.*, 336 Mass. 718, 147 N.E.2d 782, 784 (1958); *Jamison v. Cupp*, 27 Or.App. 109, 555 P.2d 475, 476–77 (1976) (explaining that the *Kite* rule was overruled in Massachusetts in *Brown*, 147 N.E.2d 782); and *Potter v. State*, 263 N.C. 114, 139 S.E.2d 4, 5–6 (1964). *See also* R.D. Hursh, *Effect of invalidation of sentence upon separate sentence which runs consecutively*, 68 A.L.R.2d 712, sections 1[b] n.12, 3[a], 3[b] (1959). Though the situation is reversed here (in that, here, the second sentence was set aside), the court explained that the same principles of fairness apply. The trial court adopted the reasoning of the various courts that have rejected the *Kite* rule based upon principles of fundamental fairness, because "this is the better and more humane view." *See, e.g., Jamison*, 555 P.2d at 476–77 (observing that the courts that have considered the issue raised in *Kite* "have consistently resolved it on the basis of traditional notions of fair play, which underlie the due process concept").

The court also observed that there is no legal authority that "when a [court] sets aside or vacates a sentence, that the vacated sentence remains in effect, such that the time served on the vacated sentence continues to apply *only* toward the vacated sentence." The court continued,

> Mr. Calvin's total sentence is five years and he has been held longer than five years. Any further incarceration on that sentence is therefore illegal. No person shall be deprived of liberty without due process of law. U.S. Const., Amend. V, and Mo. Const., art. I, sec. 10.

The court concluded that the department's theory, under which "an inmate can be required to serve time on a vacated sentence (and in effect serve time in state prison that counts toward nothing), deprives the inmate of his rights to due process of law, his right to be free from cruel and unusual punishment, and his right to be free from double jeopardy[.]"

The circuit court declared that Calvin "has served every day of his five-year sentence for criminal nonsupport" and that the department has no legal authority to maintain custody or control over Calvin or to arrest him.

Calvin contends that the trial court's analysis is proper and just. We agree. We believe that the trial court's result is correct, while the department's position is without statutory warrant and works an injustice.

*Kite* has little to do with this case. In *Kite*, the Massachusetts Supreme Court held that a sentence imposed without a specified commencement other than that it should begin from and after the expiration of a former sentence is legal. In the process of discussing the commencement of the second sentence, the court simply mentioned that if the former sentence is shortened by pardon or reversal, it expires, and the subsequent sentence takes effect as if the former sentence had expired by lapse of time. *See* 52 Mass. 581, 585. The so-called *Kite* rule was actually *dictum* that arose from the court's contemplation of how two or more sentences might fit together if there were a pardon or a reversal of the earlier sentence. *See Brown v. Comm'r of Corr.*, 336 Mass. 718, 147 N.E.2d 782, 784 (1958) (noting that the above-mentioned remarks in *Kite* were *dicta*). In any event, we need not attack the "*Kite* rule" as a general proposition. Generally, the approach suggested by the "*Kite* rule" (that if a sentence is changed by reversal or by pardon, it is treated as if it simply expired at that point) may be logical in other contexts. The issue before us here, however, is whether taking that

approach can make any sense in *this* context, especially when the *Kite* rule is combined with Missouri's former regulation at 14 CSR 80–2.040(4), which required the "prison term" portion of all sentences to be served first, before the respective "conditional release" terms.

The department's citations of Missouri authority fail to provide support for the department's position. In *State ex rel. Meininger v. Breuer*, 304 Mo. 381, 264 S.W. 1 (1924), the defendant had been convicted and incarcerated. While he was appealing his conviction, the same circuit court scheduled trial for a separate felony. The defendant sought a writ of prohibition, contending the circuit court had no jurisdiction to try him for the other offense. The defendant argued that the circuit court lacked authority to impose cumulative sentences without express statutory authority. The court rejected that argument, holding that the prosecution could proceed. Although the court mentioned and quoted language from the *Kite* case in its analysis of the issue of the court's authority, one can readily discern that the holding in *Meininger* was not based on the "*Kite* rule." *Meininger* cannot be regarded as authority that the trial court was required to follow in this setting.

The department also relies on *Ex Parte Jackson*, 96 Mo. 116, 8 S.W. 800 (1888). In *Jackson*, the defendant was sentenced to consecutive terms of three years, three years, and three years. Jackson appealed his conviction on the middle sentence and obtained a reversal. At that time, he had served out the first three year term but apparently had served no time on the second sentence. He sought release on the basis that his third sentence should be considered to be concurrent with the first sentence.

The court held that he was not entitled to release. The court said that he still had to serve the third sentence, which would be regarded as consecutive to the first sentence, in view of the fact that the second sentence was reversed. The court cited various cases, including *Kite*. *Jackson*, 8 S.W. at 801. *Jackson*, however, has nothing to do with this case in that this case is really all about the fact that the inmate had already served prison time under the second sentence. *Jackson*, thus, is not authority for the proposition for which the department cites it.

The long and short of all of the foregoing is that the department has no specific authority[7] for the proposition that the trial court erred in ruling that Calvin must be credited as to his 1996 sentence for prison time served under the 1998 sentence, which was later vacated.

■ No doubt the department is correct that the 1998 conviction and sentence had *prima facie* validity before they were set aside. In that sense, they were *voidable*. However, common sense and reasonable justice would dictate that once the conviction and sentence were set aside, they must be treated, for maximum release date purposes, as having been *void*. Thus, a recalculation of the maximum release date in view of the vacation of the 1998 sentence was entirely appropriate. When the 1998 conviction and sentence in this case were vacated for lack of a factual basis, it was a declaration that the sentence was to be regarded as though it had never existed.

7. *Ex Parte Turner*, 45 Mo. 331 (1870), and *Ex Parte Durbin*, 102 Mo. 100, 14 S.W. 821 (1890), are not on point; they merely involved issues of statutory construction as to the time of commencement of sentences imposed in addition to the first sentence imposed, when the judgment did not specify how the sentences were to be served.

## Conclusion

The trial court was correct in rejecting the department's notion that its hands were tied. The law in no way prohibits the department from granting Calvin any credit on his 1996 sentence for the time actually served in confinement.

The judgment of the trial court is affirmed.

All concur.