## COMMONWEALTH *vs.* MARLON HOLMES.

No. 12-P-59.

Hampden. January 30, 2013. - June 14, 2013.

Present: RAPOZA, C.J., CYPHER, KANTROWITZ, BERRY, & GRAINGER, JJ.[1]

Further appellate review granted, 466 Mass. 1106 (2013).

*Imprisonment,* Credit for time served. *Practice, Criminal,* Sentence.

A prisoner who had served two years on a 1997 conviction that was subsequently reversed was entitled to receive credit for the time served on the invalid conviction against a subsequent sentence for an unrelated 2003 offense committed before the reversal of the earlier conviction. [738-744] BERRY, J., dissenting, with whom KANTROWITZ, J., joined.

INDICTMENTS found and returned in the Superior Court Department on January 16, 2003.

Motions to receive credit for time served, filed on November 29 and December 16, 2011, were considered by *Mary-Lou Rup,* J., and a motion for reconsideration was considered by her.

*Marlon Holmes,* pro se.

*Jane Davidson Montori,* Assistant District Attorney, for the Commonwealth.

GRAINGER, J. The defendant appeals from the denial of his motion for credit for two years he spent incarcerated on a prior sentence that was subsequently reversed. We reverse the denial of his motion.

*Background.* As with most sentencing disputes, a specific chronology is useful to clarify the issues. On November 15, 1997, the defendant was charged with possession with intent to distribute a class B substance, in violation of G. L. c. 94C,

---

[1]This case was initially heard by a panel comprised of Justices Kantrowitz, Berry, and Grainger. After circulation of the opinion to the other justices of the Appeals Court, the panel was expanded to include Chief Justice Rapoza and Justice Cypher. See *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993).

§ 32A. On December 5, 1997, he pleaded guilty and was sentenced to serve two years in the Hampden County house of correction (the 1997 conviction). The defendant completed this sentence and was released in late 1999.

Three years later, on October 30, 2002, the defendant was arrested; he was subsequently charged with two counts of unlawful possession of a firearm and two subsequent offender counts. He pleaded guilty on July 15, 2003, and was sentenced to a term of twelve years to twelve years and one day to be served at the Massachusetts Correctional Institution at Cedar Junction (the 2003 convictions).

On October 17, 2005, while still incarcerated for the 2003 convictions, the defendant moved to withdraw his 1997 guilty plea on the basis of ineffective assistance of counsel.[2] On May 17, 2006, a District Court judge allowed the motion. The defendant's motion to dismiss the 1997 complaint with prejudice was later allowed.

The defendant then filed a motion seeking credit for the time he served on his sentence for the 1997 conviction. His motion was denied on December 2, 2011.

*Discussion.* Our law recognizes that time served under a vacated sentence should be credited against a valid one, "for only in this way can a prisoner receive credit, not as matter of grace, but as of right, for time served under an erroneous conviction." *Brown* v. *Commissioner of Correction*, 336 Mass. 718, 721 (1958) *(Brown)*.[3]

The motion judge based her denial of the defendant's motion to receive credit for this "dead time"[4] on an error of fact, one which the Commonwealth has properly conceded. She ruled

---

[2]The defendant's ineffective assistance claim was based on his counsel's failure to move to suppress improperly admitted evidence on which his conviction was based.

[3]The plaintiff in *Brown* sought only the amount of credit necessary to effect his immediate release. This was less than the entire amount of time he had served under the prior erroneous conviction; that pragmatic approach does not dilute the principle underlying the decision — that (absent exceptions discussed, *infra*) credit should be awarded for unlawful confinement.

[4]"Dead time" is defined as "time served under an invalid sentence for which no credit is given." *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 390 (1977) *(Manning)*. It is not dependent on the existence of consecutive, or "from and after," sentences, as is shown by

that this defendant sought credit to be applied against a subsequent sentence that "was not 'for an offense committed before the reversal' " of his first conviction, citing *Manning* v. *Superintendent, Mass. Correctional Inst., Norfolk*, 372 Mass. 387, 396 (1977) (*Manning*). Accordingly, she concluded that the prohibition against "banking" time was triggered in this case as the defendant could have been encouraged to engage in criminal activity knowing that he had already served the sentence which might result. But this was simply incorrect. The record shows that the defendant's 2003 convictions, for offenses committed a year earlier in 2002, were already three years in the past when his 1997 conviction was vacated in 2006. The ruling below was based on clear error.

Notwithstanding the basis on which the judge ruled, the Commonwealth advances alternative grounds, still reliant on a claim of "banking," to preserve the result. We conclude however that banking is not implicated by these facts, and that denial of credit in this case is contrary to the principle of fairness on which our cases are based.[5]

The concept of "banking" has been demarcated by the Supreme Judicial Court, and has been expressly limited to exclude the facts of this case:

> "[I]t is not our intention to grant prisoners license to commit future criminal acts with immunity. . . . Such concerns are not appropriate here. . . . Credit allowed *when the*

Justice Quirico's statement of the issue in the very first sentence of *Manning*: "This case presents the question whether a prisoner is entitled to credit on one criminal sentence for time served under another criminal sentence that was later vacated." *Id.* at 388. We note that *Manning*'s contrasting reference to *Davis* v. *Attorney Gen.*, 432 F.2d 777 (5th Cir. 1970), is focused on the impermissibility of banking, properly defined, in its rejection of credit for "a *future unrelated sentence for a crime not yet perpetrated*" (emphasis supplied). *Manning, supra* at 395 n.9, quoting from *Davis* v. *Attorney Gen., supra* at 778. See *Commonwealth* v. *Milton*, 427 Mass. 18, 21 n.4 (1998).

[5]"Familiar equitable principles require an interpretation that does not leave a prisoner having served bad or dead time for which no credit is given." *Manning, supra* at 396. "In all cases 'fairness is the appropriate measure in determining whether and to what extent' credit for time spent in custody should be given." *Commonwealth* v. *Foley*, 17 Mass. App. Ct. 238, 243 (1983), quoting from *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 427 (1978).

> *subsequent conviction is for an offense committed before
> the reversal of the first sentence in no way* permits credit
> for future criminal acts" (emphasis supplied).

*Ibid.*

The application of "banking" as an exception to the otherwise straightforward concept of credit for improper incarceration has been subjected, more recently, to some semantic confusion in our decisions: the term "discharge," referring to the crucial point in time when a conviction is reversed, has been conflated to signify release from confinement. Compare *Commonwealth* v. *Milton*, 427 Mass. 18, 25 (1998), with *Milton* v. *Commissioner of Correction*, 67 Mass. App. Ct. 253, 257 (2006).[6] That confusion appears to be the basis here for the Commonwealth's assertion that this defendant was "banking" time, even though the reversal of his first conviction occurred long after the beginning of his second confinement.

The Commonwealth argues, notwithstanding the judge's error, that credit for dead time is unavailable here because the defendant was "discharged," that is, released from prison, before his subsequent conviction.[7] Release from confinement because an improperly awarded sentence has been completed, however, is wholly irrelevant to the issue of banking.[8] Banking turns on one factor: commission of an offense with knowledge that a

---

[6]The Commonwealth's reliance on our opinion in *Milton* v. *Commissioner of Correction, supra,* perfectly illustrates the confusion associated with the misuse of the word "discharge." Our opinion contains the following language: "[A]s the [Supreme Judicial] court [has] noted . . . , 'it was important to the holding [in *Manning*, 372 Mass. 387,] that the defendant was convicted of the second crime *prior to being discharged on the first*' " (emphasis supplied). *Milton* v. *Commissioner of Correction, supra* at 256-257, quoting from *Commonwealth* v. *Milton, supra* at 24. But the word "discharge" is not used anywhere in *Manning, supra.* The Supreme Judicial Court, consistent with *Brown*, 336 Mass. 718, and all its other decisions on this subject, held that Manning was entitled to credit for time served on his first sentence because that sentence was "*reversed*" after the subsequent conviction (emphasis supplied). *Manning, supra* at 396.

[7]Misuse of the word "discharge" to signify release from prison has also contributed to the otherwise immaterial reliance on consecutive sentences as a prerequisite to credit.

[8]Obviously, a prisoner who is still serving a sentence when the underlying conviction is reversed will simultaneously be "discharged" in both senses of the word — both from the conviction and from confinement. But the fact that

sentence previously served has been judged improper. The location of a defendant, in prison or out, at the time the critical knowledge is acquired has no bearing whatsoever on the purpose underlying the banking exception: discouraging individuals from committing future crimes. Moreover, the contrary approach has the unintended result of denying credit in those cases where the improper deprivation of liberty was greatest — an entire sentence served for an erroneous conviction, rather than one fortuitously interrupted by reversal in medias res.

An additional confusion in the consideration of dead time is also manifested in this case: the importation of the concept of a "related" crime where that issue has no relevance. The Legislature has mandated that defendants receive sentencing credit for time spent in pretrial confinement on the same offense. G. L. c. 127, § 129B. G. L. c. 279, § 33A. This requirement, also straightforward in concept, becomes muddled when an individual already serving time is indicted for another offense, and claims to be in pretrial confinement on the new charge (thus entitled to credit) while simultaneously serving a separate sentence. Our cases have sensibly rejected such claims, in part because the "unrelated" nature of the two offenses makes it clear that the prisoner would have been in custody regardless of the fact that he was also awaiting trial. See, e.g., *Needel, petitioner,* 344 Mass. 260, 261-262 (1962); *Libby* v. *Commissioner of Correction,* 353 Mass. 472, 475 (1968).[9] See also *Commonwealth* v. *Foley,* 17 Mass. App. Ct. 238, 244 (1983) (noting that since passage of G. L. c. 279, § 33A, the only decisions denying credit for unrelated convictions are those in which double credit was sought).

These statutory claims are misapplied when utilized in cases, such as this one, where pretrial confinement is not at issue.[10]

---

a defendant may have already been released from confinement when a conviction is reversed proves nothing. It remains necessary to determine whether a later offense was committed with or without knowledge of the reversal to establish whether banking applies.

[9] "The short answer is that the petitioner was not held 'in custody awaiting trial' nor 'in confinement prior to such sentence and while awaiting trial.' He was in confinement pursuant to a sentence for an unrelated crime of which he had been convicted." *Libby* v. *Commissioner of Correction, supra* at 475, quoting from *Needel, petitioner, supra* at 262.

[10] The Supreme Judicial Court has specifically clarified that the relationship

Their importation has led to the converse assumption that the right to dead time credit can only be invoked, regardless of circumstance, if two crimes are "related." This approach has been rejected by the Supreme Judicial Court in *Commonwealth* v. *Milton*, 427 Mass. 18, a case involving pretrial confinement followed by an acquittal, followed in turn by another offense: "In some circumstances, a defendant may be allowed to credit time in an unrelated case if necessary to prevent a defendant from serving 'dead time.' " *Id.* at 24 (discussion, in dictum, of pretrial confinement credit statutes where "banking" exception to dead time dispositive to outcome). See *Commonwealth* v. *Foley*, *supra* (rejecting argument that defendant not entitled to credit for dead time because charges are "unrelated"), overruled on other grounds, *Commonwealth* v. *Amirault*, 415 Mass. 112, 117 n.9 (1993), and *Commonwealth* v. *McLaughlin*, 431 Mass. 506, 519 (2000).[11] The Supreme Judicial Court has made clear that "the better and more humane view" provides credit for time served on an invalidated conviction against a sentence for an unrelated credit. *Brown*, 336 Mass. at 721.

Because the potential variations in sequence and in chronological relation among two or more charges, convictions, confinements, sentences, and reversals are countless, our analysis in a particular case should not be diverted from "the court's evident and overriding concern . . . that a prisoner receives credit as a matter of right for time served under an erroneous conviction." *Gardner* v. *Commissioner of Correction*, 56 Mass. App. Ct. 31, 38 (2002) (noting that "the fundamental principle underlying decisions in this area is 'fair treatment of the prisoner.' *Commonwealth* v. *McLaughlin*, [*supra* at 515], quoting from *Com-*

between the statutes and a claim for credit involving the reversal of a prior unrelated conviction, while indirect, is based on policy considerations: "The problem is . . . what to do for a prisoner who has served time under a sentence that is reversed. The jail time credit statutes *indicate legislative policy that credit be granted*" (emphasis supplied). *Manning*, 372 Mass. at 396. (The same policy considerations underlie the ABA Standards for Criminal Justice, Sentencing § 18-3.21[f] [3d ed. 1994], which, like the jail time credit statutes, posit fact patterns not present in this case.)

[11]In *Commonwealth* v. *McLaughlin*, *supra*, the Supreme Judicial Court disapproved that portion of *Commonwealth* v. *Foley* which permitted the trial judge to deny credit by staying execution of the defendant's sentence during his commitment at Bridgewater State Hospital, which had effectively lengthened his sentence by six months.

monwealth v. *Grant*, 366 Mass. 272, 275 [1974]"). See *Lewis* v. *Commonwealth*, 329 Mass. 445, 448 (1952); *Chalifoux* v. *Commissioner of Correction*, 375 Mass. 424, 427 (1978); *Lynch, petitioner*, 379 Mass. 757, 758 (1980); *Commonwealth* v. *Maldonado*, 64 Mass. App. Ct. 250, 251 (2005).[12]

The majority of other State and Federal courts agree with the general principles enunciated in *Brown*, 366 Mass. 718, and *Manning*, 372 Mass. 387,[13] namely, a prisoner should receive full credit for time served on an invalidated sentence toward a subsequent, unrelated sentence so long as concerns regarding banking (properly defined) or double counting are not present.[14]

The Federal Circuit Courts of Appeals have also reviewed this issue, invariably in the context, stated or implicit, that the due process clause of the Fourteenth Amendment requires credit for State prisoners under such circumstances. See *Tucker* v. *Peyton*, 357 F.2d 115 (4th Cir. 1966); *Goodwin* v. *Page*, 418 F.2d 867, 868 (10th Cir. 1969).[15] The United States Court of Appeals for the Fifth Circuit applied the same result in favor of

[12]Neither *Williams* v. *Superintendent, Mass. Treatment Center*, 463 Mass. 627, 632-633 (2012), nor *Commonwealth* v. *Carter*, 10 Mass. App. Ct. 618, 619-621 (1980), are to the contrary. The first determined that an application for dead time credit was not timely made; the second rejected an effort to receive multiple days of credit for each day of pretrial confinement. They both acknowledge the principles underlying the case law cited above.

[13]As with *Brown* and *Manning*, we discern no rationale in other State or Federal decisions that limits credit to circumstances involving consecutive sentences or, indeed, for any reason other than the stated exceptions of banking and double credit.

[14]See, e.g., *Vellucci* v. *Cochran*, 138 So. 2d 510, 512 (Fla. 1962); *Jackson* v. *Jones*, 254 Ga. 127, 128 (1985); *Butcher* v. *State*, 196 Md. App. 477, 490 (2010) (finding "the majority rule [in the United States] to be that, when one of a series of consecutive sentences is nullified, the next valid sentence begins on the date set for the commencement of the invalidated sentence"); *Calvin* v. *Missouri Dept. of Corrections*, 277 S.W.3d 282, 288-289 (Mo. App. 2009) (holding that time spent incarcerated on an invalidated conviction must be credited toward another valid, unrelated sentence); *Burlew* v. *Missouri Dept. of Corrections*, 340 S.W.3d 259, 263 n.3 (Mo. App. 2011) (noting that the rule adopted in *Calvin* v. *Missouri Dept. of Corrections, supra* at 287, is consistent with other States); *State* v. *Smith*, 267 N.C. 755, 756 (1966). See generally ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures § 18-4.7(c) (1979); Wagner, Sentence Credit for "Dead Time," 8 Crim. L. Bull. 393 (1972).

[15]In the strongest language that we have uncovered in this context, the United States Court of Appeals for the Tenth Circuit opined that denial of

a Federal prisoner in *Meadows* v. *Blackwell*, 433 F.2d 1298 (5th Cir. 1970), stating "[i]t is clear to this Court that appellant is entitled to the relief [credit for time served on an unrelated vacated sentence] sought." *Id.* at 1299, citing *Tucker* v. *Peyton, supra; Goodwin* v. *Page, supra; United States* v. *Maroney*, 264 F. Supp. 684 (M.D. Pa. 1967).

*Conclusion.* In this case we cannot say with confidence that the judge would have denied the defendant's motion, absent her mistake of fact. Of greater, and overriding, significance is the principle that

> "[l]iberty is of immeasurable value; it will not do to read statutes and opinions blind to the possible injustice of denying credit."

*Milton* v. *Commissioner of Correction*, 67 Mass. App. Ct. at 258, quoting from *Manning, supra* at 394.

This defendant is entitled as a matter of right to credit for the time he spent in prison on a vacated conviction.[16] The order dated December 2, 2011, denying the motion for credit for time served is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

BERRY, J. (dissenting, with whom Kantrowitz, J., joins). This

---

credit "would abuse due process, shock the judicial conscience and effect the imposition of a cruel and unusual punishment under the eighth amendment." *Goodwin* v. *Page, supra.*

[16]We are entirely unpersuaded by several peripheral points raised in this case. The first is that the Commonwealth may have elected not to contest the defendant's collateral attack on his first conviction precisely because he had already been made to spend two years in prison. The second is the notion that crediting the defendant for dead time is inappropriate because it only serves to "reward" him once convicted of a subsequent offense (i.e., the "recidivist" objection). Considering the facts of this case, neither claim is consonant with basic precepts of due process.

Finally, we do not speculate on the possible consequences of what our dissenting colleagues identify as credit awarded in circumstances involving the discovery that drug samples were tainted or lost. See *post* at note 1. We simply observe that the application of the principles discussed herein would be no less important in such circumstances.

case presents the important question whether a defendant who is currently serving a sentence must receive an immediate day-for-day credit against that sentence when an earlier, unrelated conviction, as to which the defendant had already completed his sentence prior to the commission of the crime for which he is currently serving his sentence, is vacated. I do not believe the answer to this question reached by the majority is supportable. Accordingly, I dissent.

Furthermore, the unintended consequence of the majority's interpretation will be to encourage recidivists to file new trial motions years after the fact[1] in the hope of vacating earlier convictions as to which sentences have already been served in the hope of then unearthing a line of credit against a sentence being served for a subsequent and unrelated offense (with a substantial prospect, as here, for trading house of correction time for State prison time).

In this case, the defendant seeks to receive an immediate credit against two concurrent twelve-year State prison sentences for 2003 firearm convictions on account of the vacating (in 2006) of a 1997 drug conviction for which the defendant had already completed his two-year house of correction sentence in 1999,[2] prior to committing the firearm offenses. The defendant committed the firearm offenses in October, 2002, at a time when he had fully served the 1997 drug-conviction sentence in

---

[1] A new trial motion may be filed at any time under Mass.R.Crim.P. 30, as appearing in 435 Mass. 1501 (2001). See *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 636 (2001). Further, there is no limit on the number of new trial motions a defendant may file or the points of attack, both substantive and procedural, that a defendant may advance in an effort to vacate a prior conviction. For example, such new trial motions may raise claims under *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974) (ineffective assistance of counsel — which, by the way, was the basis for the vacating of the 1997 drug conviction in this case). To extrapolate further: Were a new trial motion to be granted in certain cases, and were there no prosecution that ensued thereafter leading to a nolle prosequi — for whatever reason, perhaps because of evidence being tainted or lost, including, but not limited to, drug evidence — then, under the defendant's theory, as accepted by the majority, would jail credit be available for other future unrelated offenses?

[2] In November, 1997, the defendant was charged with possession of a class B substance with intent to distribute. G. L. c. 94C, § 32A. On December 5, 1997, the defendant pleaded guilty and was sentenced to serve two years in a house of correction (the 1997 drug conviction).

the house of correction and had been released to society. Specifically, on January 11, 2003, a four-count indictment issued charging that the defendant, on or about October 30, 2002, unlawfully possessed a firearm without a firearm identification card, in violation of G. L. c. 269, § 10(*h*) (count 1), with an enhancement count for having three prior convictions of violent crimes or serious drug offenses, in violation of G. L. c. 269, § 10G(*c*) (count 2), as well as unlawful possession of a firearm without a license, in violation of G. L. c. 269, § 10(*a*) (count 3), again with an enhancement count under G. L. c. 269, § 10G(*c*) (count 4).

In 2005, eight years after his drug conviction and about five years after the completion of the drug-conviction sentence, the defendant moved to withdraw his guilty plea. As the basis for the plea withdrawal motion, the defendant contended that his trial counsel was ineffective in not filing a motion to suppress the drugs found on the defendant because the tip from a confidential informant did not have sufficient corroboration to support reasonable suspicion. However, the record before us has no explanation by the District Court judge of the reasons why the judge allowed the defendant's plea withdrawal, and no information concerning the reasons for vacating the guilty plea and dismissing the complaint with prejudice.

In 2011, while still incarcerated on the twelve-year sentences for the 2003 firearm convictions, the defendant filed a motion seeking credit for time served on the just described vacated 1997 drug conviction. As previously noted, a Superior Court judge denied the motion, and this appeal followed.

Accepting the defendant's argument, the majority concludes that the jail credit statutes entitle the defendant to a full day-for-day credit of his vacated 1997 drug-conviction sentence against his State prison sentence for the 2003 firearm convictions.[3] Relying largely on *Manning* v. *Superintendent, Mass. Correc-*

---

[3]The indictments for the October, 2002, firearm offenses, which were entered on January 13, 2003, included statutory sentencing enhancements based on three prior violent crimes or serious drug offenses under G. L. c. 269, § 10G(*c*). The mandatory minimum under § 10G(*c*) is fifteen years in State prison. The mandatory minimum under G. L. c. 269, § 10G(*b*), for two violent crimes or serious drug offenses, is ten years in State prison. As a result of plea negotiations, the defendant pleaded guilty to the firearm charges, and

*tional Inst., Norfolk,* 372 Mass. 387 (1977) (*Manning*), the majority reasons that, unless the defendant receives a credit, it would be unfair because the defendant would have "dead time."[4] I do not believe that *Manning* supports the construct that vacating the 1997 drug conviction makes its sentence dead time for which the defendant is entitled to an immediate credit. Indeed, *Manning* is to the contrary. As *Manning* stated, "[a]n allowance for prison time previously served under a void commitment does not reduce sentences imposed as a result of new and different crimes." *Id.* at 395 n.9, quoting from *Davis* v. *Attorney Gen.,* 432 F.2d 777, 778 (5th Cir. 1970). Cf. *Commonwealth* v. *Blaikie,* 21 Mass. App. Ct. 956, 957 (1986) ("We perceive no special consideration of fairness which requires crediting the Suffolk sentences with time spent in confinement awaiting sentence on the unrelated Middlesex offenses"). "A prisoner does not generally receive credit for jail time served for an unrelated offense." *Commonwealth* v. *Carter,* 10 Mass. App. Ct. 618, 620 n.4 (1980).[5] See *Williams* v. *Superintendent, Mass. Treatment Center,* 463 Mass. 627, 631 (2012) (*Williams*). In this case, the drug charge underlying the defendant's 1997 conviction is wholly unrelated to, and bears no factual or temporal relation to, the later firearm offenses underlying the 2003 convictions.

The defendant contends that prohibited "banking" (see note 4, *supra*) of time served did not exist here because the time line reflects that the October, 2002, criminal acts (underlying the

as part of the plea deal, the enhancement charges were reduced from three to two prior convictions. See G. L. c. 269, § 10G(*b*). The sentencing enhancements in § 10G(*b*) are based on two, rather than three, prior violent crimes or serious drug offenses, and the defendant thereby avoided the fifteen-year mandatory § 10G(*c*) minimum sentence.

[4]The terms "banking" and "dead time" are used in various and sometimes incongruous contexts in the case law. In a sense, neither term exactly fits this case. Rather, what is at issue here is not, strictly speaking, banked or dead time, but whether the jail credit statutes and case law mandate an immediate credit against a sentence a defendant is currently serving when a previous, unrelated conviction and sentence is later vacated, for whatever reason. Notwithstanding the semantic issue, I will follow the terminology in this dissent.

[5]Not implicated in this case is the rule concerning time held on bail pending trial that "defendants have a right to have their sentences reduced by the amount of time they spend in custody awaiting trial." *Commonwealth* v. *Harvey,* 66 Mass. App. Ct. 297, 299-300 (2006). See G. L. c. 279, § 33A.

2003 firearm convictions) were committed prior to the vacating of (and prior to the defendant's knowledge of the vacating of) the 1997 drug conviction in May, 2006. However, this is not a correct time marking for banking vis-à-vis future criminal conduct. *Rather, it is the date of the commission of the unrelated crime in the future that is the central entry on the time line, not the date of, or the effect of, the defendant's knowledge concerning the potential of a vacated sentence on an unrelated prior offense.*

Just because the defendant did not know at the time of his *future, unrelated* criminal conduct in October, 2002, that his plea withdrawal motion would be allowed four years later in 2006, that does not give the defendant the benefit of the time served on the prior, unrelated 1997 drug conviction. To the contrary, what the defendant wants to do is draw down on a 1997-1999 jail-time-served/banked-jail-time credit-line, as an offset to a later sentence imposed for the later committed, unrelated firearm convictions. And, that is precisely what *Manning* and *Commonwealth* v. *Milton*, 427 Mass. 18, 24-25 (1998) (*Milton*) reject. To allow credit for the time served on the unrelated 1997 drug conviction to reduce the sentences imposed for the future 2003 firearm convictions would, in effect, render to the defendant "a license to commit future criminal acts with immunity." *Id.* at 25.

The procedural background in *Milton* illustrates why the defendant in the present case is not entitled to credit for time served on the vacated conviction. In November, 1993, the *Milton* defendant was found guilty of various assault and battery and disorderly conduct charges for which he was sentenced to two terms of one year and one term of six months, all concurrent. *Id.* at 19. The sentences were suspended, and the defendant was placed on two years' probation. *Ibid.* Then, in January, 1994, the *Milton* defendant was arrested for armed robbery and held in lieu of bail. *Ibid.* In March, 1995, the armed robbery charge was reduced to unarmed robbery, and the *Milton* defendant was acquitted on that reduced charge. *Ibid.* Six months later, in September, 1995, the *Milton* defendant was charged with disorderly conduct. *Id.* at 20. A probation violation notice issued, and in November, 1996, the *Milton* defendant was found

to have violated his probation on the original November, 1993, conviction. *Ibid.* The *Milton* defendant argued that he was entitled to credit on the resulting probation surrender sentence for the time that he had spent incarcerated while awaiting trial for the January, 1994, robbery charge, for which he was ultimately acquitted. The Supreme Judicial Court held to the contrary; it stated that "the defendant is not entitled to receive credit for time he served awaiting trial on the robbery charge, to reduce the sentence imposed as the result of a crime he committed six months after his acquittal and discharge on the robbery charge." *Id.* at 25.

In a process of alchemy, the defendant seeks to reconfigure the vacated 1997 drug-conviction sentence into so-called dead time, so that he can use the time that he served on that sentence, nunc pro tunc, as a line of credit for the later sentences on the 2003 firearm convictions. This, to me, strikes against the rationale of *Manning*, as well as *Milton*. Indeed, *Milton* states that "the need to prevent criminal defendants from 'banking time' for use against future sentences outweighs any fairness issues normally applicable in [dead time] situations." *Id.* at 25.

Here, the defendant contends that it would be unfair for him to lose jail time credit and cites language in *Williams*, 463 Mass. at 632, which states, "[W]here possible, in the interest of fairness, a prisoner should not be required to serve 'dead time.' " But, in asserting this fairness demand, the defendant ignores the counterbalance set up in *Williams*, which is that, "[w]hen faced with a request for jail time credit regarding unrelated offenses," the avoidance of dead time is merely one consideration. *Ibid.*

The overarching consideration, which tips the balance against the purported "fairness" of this defendant getting jail time credit, is that criminal defendants not "establish[] a line of jail time credit that can be applied to future offenses." *Id.* at 631. This counterbalancing consideration negates this defendant's fairness argument, as *Manning*, 372 Mass. at 395-396, and *Milton*, 427 Mass. at 25, indicate.

Finally, I note that, in support of its fairness analysis, the majority cites a series of cases from various Federal and other State jurisdictions to support the proposition that credit is due in this case. See *ante* at notes 13-15, and accompanying text. How-

ever, the cases cited and quoted from are quite distinguishable from the present case, as each involves a scenario where the defendant had two or more consecutive sentences, one of which was declared invalid while the defendant was still incarcerated.[6] This is not the issue here. Simply put, these cases do not address situations, like the present case, where a defendant seeks to credit time previously served against a current, nonconsecutive or nonconcurrent sentence.

Unlike the cases that the majority cites — see, in particular, the heavy reliance on Federal cases, *ante* at 743-744 — this case does not involve consecutive "from and after" or concurrent sentences. Indeed, consecutive sentences — which are not present here — were central to the analysis in *Manning*, where the court determined that the time served on a series of invalidated concurrent sentences should be credited against a successive "from and after" sentence. See *Manning*, 372 Mass. at 388-389, 396. However, the vacating of an entirely unrelated conviction does not, I submit, immediately render the sentence dead time as to which a credit is in order. (As to the term "dead time," see note 4, *supra*.) As stated in *Manning*, "[a]n allowance for prison time previously served under a void commitment does not reduce sentences imposed as a result of new and different crimes." *Id.* at 395 n.9, quoting from *Davis* v. *Attorney Gen.*, 432 F.2d at 778.

---

[6]For instance, the majority cites and discusses, *ante* at 743-744 & nn. 14-15, the following cases: *Tucker* v. *Peyton*, 357 F.2d 115, 116-117 (4th Cir. 1966); *Meadows* v. *Blackwell*, 433 F.2d 1298, 1299 (5th Cir. 1970); *Goodwin* v. *Page*, 418 F.2d 867, 868 (10th Cir. 1969); *Vellucci* v. *Cochran*, 138 So. 2d 510, 511-512 (Fla. 1962); *Jackson* v. *Jones*, 254 Ga. 127, 128 (1985); *Calvin* v. *Missouri Dept. of Corrections*, 277 S.W.3d 282, 283 (Mo. App. 2009); *State* v. *Smith*, 267 N.C. 755, 756 (1966). Indeed, in reference to the opinion of the United States Court of Appeals for the Tenth Circuit in *Goodwin* v. *Page*, *supra*, the majority emphasizes the "strong[] language" the court uses to condemn the State's attempted denial of credit. See *ante* at note 15. Yet, the holding in *Goodwin* v. *Page* applies to consecutive sentences — one of which had been vacated — and has no bearing on the procedural situation at issue here.