NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1334                                          Appeals Court

COMMONWEALTH  vs.  WILLIAM VELEZ.

No. 13-P-1334.

Suffolk.     November 3, 2014. - December 9, 2014.

Present:  Grainger, Rubin, & Hanlon, JJ.

Imprisonment, Credit for time served.  Practice, Criminal, Sentence, Probation.


Indictment found and returned in the Superior Court Department on September 3, 2009.

A motion for pretrial confinement credit, filed on April 17, 2013, was considered by Frances A. McIntyre, J.


Rebecca A. Jacobstein for the defendant.
Helle Sachse, Assistant District Attorney, for the Commonwealth.


HANLON, J.  The defendant appeals from the partial denial of his motion for pretrial confinement credits on the sentence imposed on his probation revocation, claiming that he is entitled to an additional fifty-six days of credit for time he

spent in jail awaiting trial on what he describes as unrelated charges. We affirm in part and reverse in part.

Background. "As with most sentencing disputes, a specific chronology is useful to clarify the issues." Commonwealth v. Holmes, 83 Mass. App. Ct. 737, 737 (2013), S.C., 469 Mass. 1010 (2014). At various times during the period at issue, the defendant had three unrelated, open criminal charges -- an assault and battery charge, an unarmed robbery charge that was reduced to larceny from the person, and a charge of failure to register as a sex offender. It is the failure to register charge that is primarily at issue in this case; it arose in the Waltham District Court, which issued a criminal complaint for that offense on May 8, 2009. The defendant was arraigned on July 22, 2009, and was held at the Nashua Street jail on $5,000 bail from the July 22, arraignment date until at least August 24, 2009.[1]

The docket sheet in the record does not indicate that bail ever was posted or reduced; however, the parties appeared to agree that the defendant was not held on that charge after August 24, 2009, apparently in reliance on the letter from the keeper of the records at the Nashua Street jail. See note 1,

---

[1] The appendix includes a letter from the keeper of the records at the Nashua Street jail which indicates that the defendant was incarcerated on the failure to register charge at the Nashua Street jail from July 22, 2009, through August 24, 2009.

supra. However, the District Court docket sheet also shows that, on August 24, 2009, the failure to register case was continued to September 29, 2009, with the notation "Habe to Nashua St. Jail same bail $5/0'." From this, we conclude that, although the defendant was held in the Suffolk County (Nashua St.) jail on other charges, and required a writ of habeas corpus to bring him back to the District Court on September 29, he also was transported with a $5,000 bail mittimus to secure his return to the District Court to appear for the failure to register case.[2] There is no entry indicating that the bail remained the same at the next hearing on September 29, but, by that time, the defendant had been indicted, and the indictment warrant would have prevented his release regardless of the District Court bail status.

The defendant was indicted on the failure to register case on September 3, 2009, and arraigned in Superior Court on October 7, 2009. At his arraignment, he was held on the same $5,000 cash bail as in the related District Court case; he remained in custody until March 31, 2010, when he pleaded guilty and was sentenced to three years' probation. On September 13, 2011, the defendant was before the court for a probation violation hearing

_____

[2] At oral argument, the defendant agreed with this reading. The Commonwealth agreed that the docket sheet could be read that way, but maintained that the record of the Nashua Street jail was more likely to be accurate.

and afterwards was released on personal recognizance.  He defaulted on November 29, 2011, and remained in default until January 10, 2012, when he appeared before the court; he was then held until February 28, 2012, when he was found in violation of the terms of his probation.  On March 1, 2012, the defendant was sentenced to State prison for five years to five years and one day.  It is against this sentence that the defendant seeks credit for time served.

On April 17, 2008, more than one year before the complaint for failing to register issued, the defendant had been charged in the Boston Municipal Court with one count of assault and battery.  He pleaded guilty on August 12, 2008, and was placed on probation for two years.  On August 26, 2008, the defendant was before the court for a preliminary probation violation hearing.  That matter was continued several times until the defendant failed to appear on November 19, 2008.  On July 9, 2009, the defendant was back before the court for violating the terms of his probation; he was detained on the probation violation until August 21, 2009, when he stipulated to the probation violation.  His probation was then extended to August 11, 2010.  A warrant was issued for the defendant's arrest on that probation case when he failed to appear on March 22, 2010.  On April 1, 2010, the day after he pleaded guilty to failing to register as a sex offender, the defendant went back before the

Boston Municipal Court on the assault and battery case; his probation was then terminated, and he was discharged.

In addition, on August 26, 2008, the defendant had been charged in the Boston Municipal Court with unarmed robbery and assault and battery by means of a dangerous weapon (larceny charge).  He was held initially, but bail was reduced to $400 cash on September 23, 2008, and he appears to have posted the bail.  As noted earlier, the defendant defaulted on November 19, 2008, and remained in default until he came back before the court on July 9, 2009.  He was held on $750 cash bail until October 21, 2009, when the Commonwealth answered not ready for trial, and the charges were dismissed "For Want of Prosecution."

The defendant originally was given fifty-one days' credit for the time he was held between January 10, 2012, through February 29, 2012, while the probation violation hearing (on the failure to register charge) was pending, before he received a sentence on March 1.  He later was given an additional 176 days of credit for the time he spent from October 7, 2009, when he was arraigned in Superior Court on the failure to register charge, through March 31, 2010, when he was placed on probation. The defendant then filed a motion requesting pretrial confinement credit for ninety additional days, from July 9, 2009, through October 6, 2009.  The judge allowed the motion with respect to the thirty-four days from July 22, 2009, through

August 24, 2009, when the parties agree that the defendant was held on District Court bail for the failure to register complaint. The judge denied the motion with respect to the remaining fifty-six days.

Discussion. The defendant now argues that the judge unfairly declined to credit him with fifty-six days he spent incarcerated awaiting trial on what he characterized originally as unrelated charges. The defendant's request for credit can be divided into two parts: first, during the thirteen days from July 9, 2009, through July 21, 2009, he was held on both the assault and battery charge and the larceny charge, but not the failure to register charge; second, during the forty-three days from August 25, 2009, through October 6, 2009, he was held on the larceny charge and, as appears from our review, also on the failure to register charge.

The first period, that is, the time the defendant was held only on the assault and battery and the larceny charges was for different crimes, unrelated to and, in fact, preceding his arraignment on the failure to register charge for which he is now serving a sentence. A defendant normally is not entitled to credit for time spent in detention on unrelated charges. See Commonwealth v. Milton, 427 Mass. 18, 24 (1998) ("[T]ime spent in custody awaiting trial for one crime generally may not be credited against a sentence for an unrelated crime"). While

"[i]n some circumstances, a defendant may be allowed to credit time in an unrelated case if necessary to prevent a defendant from serving 'dead time,'" ibid., this first period of time is not such a circumstance. Permitting the defendant to credit those days is tantamount to permitting him to "bank" time -- not against the sentence on the failure to register charge, which crime, admittedly, he had already committed, but against the sentence on the probation violation on the failure to register charge, which came later, at least after he was placed on probation on March 31, 2010. As the court pointed out in Commonwealth v. Holmes, 469 Mass. at 1011, "the banking prohibition outweighs any concern about dead time."

The second period, from August 25, 2009, through October 6, 2009, is different. During that period, it appears that, notwithstanding the $750 bail on the untried larceny case, the defendant actually and primarily was held on the $5,000 bail that was set initially in the District Court on the failure to register charge at issue, and reaffirmed in Superior Court when the defendant was arraigned on the indictment for that charge. Despite the judge's contrary finding, the case records on that charge support our conclusion that the time period at issue was governed by the failure to register charge that is the basis of the defendant's sentence. It is also clear that any time spent in custody awaiting trial on a charge should be credited against

a later sentence on that offense, even if a period of probation precedes the imposition of the committed sentence. See Watts v. Commissioner of Correction, 42 Mass. App. Ct. 951, 953 (1997) (Days spent awaiting trial on a charge that resulted in a probation sentence "are not inevitably lost to the [defendant] because he would become entitled to a credit for them in the event he were to be imprisoned for a probation violation with respect to his suspended sentences on the new crimes. See G. L. c. 279, § 33A").

Insofar as the order on the defendant's motion for pretrial confinement credit denies credit for the thirteen-day period between July 9, and July 21, 2009, it is affirmed. As to the second forty-three day period at issue, that is, from August 24 to October 6, 2009, the order is reversed, and a new order shall enter allowing the defendant credit for that time against the sentence he is now serving.

So ordered.

GRAINGER J. (concurring).   I concur in the result reached by the majority, and wish to acknowledge the precision and conscientious analysis required to parse a record of this complexity.  I write separately to note that our current case law obviates the need for much of the careful review afforded this defendant.  While fairness is the professed touchstone by which we determine entitlement to credit for previous incarceration,[1] Commonwealth v. Holmes, 469 Mass. 1010, 1011 (2014) (Holmes), citing Chalifoux v. Commissioner of Correction, 375 Mass. 424, 427-428 (1978), our law now severely circumscribes that concept.

This is best illustrated by the thirteen-day period this defendant was held for an "unrelated" offense, after which he was released without any change to his previous sentence of straight probation, and for which he then sought credit.  The motion judge denied his request, speculating that "it may have been considered by the prosecutor and the Probation Department that [the defendant's] pretrial detention was a sufficient penalty for the circumstance."  The judge's speculation seeks to justify the thirteen days of incarceration as tantamount to the imposition of a sentence for time served, albeit without the

_____

[1] The defendant's petition for credit implicates, but does not explicitly invoke, the prohibition under the Fifth Amendment to the United States Constitution against deprivation of liberty without due process.  See art. 12 of the Massachusetts Declaration of Rights.

benefit of any actual finding, conviction, or accompanying sentencing procedure. Yet even that strained rationale no longer appears necessary to meet our current standard of fairness, as the Supreme Judicial Court has determined that we will not require the Commonwealth to expend resources in order to provide a legal basis for incarceration merely to avoid the possibility that a defendant may seek credit for that imprisonment at some future time.[2] Holmes, supra at 1013.

Additional factors, disconcertingly asserted by our case law as pertinent to credit for dead time, are also present here. This defendant is a multiple recidivist. Without a second incarceration, credit is not possible; recidivism is thus a precondition to raise the issue of credit for dead time. Yet even as it does so, recidivism is considered a factor to be weighed against granting credit for dead time, automatically diminishing entitlement to fairness. Ibid. I submit that recidivists have the same right as other individuals not to be incarcerated without a legal basis, and to receive credit if it is determined that they were.

---

[2] I concur independently of this issue because I agree that "banking," properly defined, provides a legitimate basis to deny credit here, as the defendant knew he had been released without a finding before he violated his probation on the failure to register charge.

Recidivism obviously does not come into play in the provision of credit for time served in computing a sentence for the same crime after trial and conviction. Credit for such pretrial confinement is not subject to dispute in Massachusetts and does not raise the issue of dead time, as it involves no subsequent reversal. It does, however, provide the purely semantic source of the concept, imported into our cases, of the entitlement to credit for unjustified imprisonment only on a "related" offense. This has no rational nexus to any considerations of fairness. Holmes, supra at 1012. ("Substantive or temporal connection" constitute very important factors in dead time consideration).

Yet additionally, our cases have held that a sentence fully served, then vacated, is less deserving of credit than one interrupted in medias res. Holmes, supra at 1012. I submit that the application of redress only to a shorter period of legally unsupported imprisonment, but not to a longer one, is illogical, and certainly not consonant with any rational notion of fairness.

Finally, our case law holds that the underlying reason a conviction is vacated should be considered in deciding whether to credit a defendant for time served pursuant to that conviction. We favor reversals based on indicia of actual innocence. For example, in Holmes, the defendant served two

years pursuant to a conviction that was vacated when a judge determined the defendant had not received effective assistance of counsel.  Thus, despite the reversal of his conviction, Holmes did not fulfil what can only be described as a judicially established defendant's burden to establish his innocence of the underlying charge.  Holmes, supra at 1012 n.3.  To be sure, Holmes states that there may arise an "equally compelling circumstance" analogous to a determination of innocence that would meet the test of fairness.  But ineffective assistance of counsel, notwithstanding its constitutional dimension,[3] is found not to meet this test.

I concur in the denial of credit in this case because knowledge of a previous legally unjustified confinement can be imputed to this defendant at the time when he again violated his probation. If the timing were otherwise, fairness would compel a contrary result.

---

[3] See Sixth Amendment to the United States Constitution; art. 12 of the Massachusetts Declaration of Rights; and Strickland v. Washington, 466 U.S. 668, 686 (1984).